## HILL v. MAYOR, ETC., OF CITY OF NEW YORK.

*(Supreme Court, Special Term, New York County. June, 1891.)*

1. WHARVES—USE AS DUMPING GROUND—INCONSISTENT STATUTES.

Laws N. Y. 1881, c. 367, creating the "department of street cleaning," in New York city, provides (section 4) that the authorities having the management and control of the public docks, piers, and slips of said city shall designate and set apart for the use of the commissioners of street cleaning suitable and sufficient slips, etc., for his use in executing his duties, "excepting slips, docks, and piers on the East river set apart for the use of canal-boats." Section 12 repeals all "acts and parts of acts inconsistent herewith." Laws N. Y. 1875, c. 249, (regulating the use of

slips, etc., in New York city,) § 3, provides that it shall not be lawful to permit, for the use as a dumping ground, of any slip, etc., on East river, "which has heretofore been used for the loading and discharging of sailing vessels regularly employed in foreign commerce: * * * provided, however, that nothing in this section contained shall apply to any wharf, pier, slip, or bulk-head * * * reserved for a special use by any existing law." Section 4 of the act of 1881 was re-enacted by Laws N. Y. 1882, c. 410, (consolidation act,) §§ 706, 728; and section 3 of the act of 1875 was re-enacted by section 773 of the consolidation act. *Held*, that sections 706, 728, 773, of the consolidation act would be construed together, and section 773, (re-enacting Laws 1875, c. 249, § 3,) which is apparently inconsistent with sections 706, 728, (re-enacting Laws 1881, c. 367, § 4,) would be construed as limiting to "a special use," existing in 1875, the proviso therein contained, as to the prohibition against the use as a dumping ground of any pier, etc., theretofore used by "sailing vessels regularly employed in foreign commerce," except piers, etc., "reserved for a special use by any existing law;" and a pier which had been set apart under existing laws as a dumping ground when the consolidation act took effect was not affected by section 773.

**2. NUISANCE—IRREPARABLE INJURY—INJUNCTION.**
The designation of piers as dumping grounds for the use of the street-cleaning department of New York city being necessary for the preservation of the health of the citizens, such use will not be enjoined as a nuisance on the ground that one individual is inconvenienced thereby, unless it appears that such individual would suffer irreparable as well as special injury.

Action by William Hill against the mayor, etc., of the city of New York. *Shearman & Sterling*, (*Thomas G. Shearman* and *John A. Garver*, of counsel,) for plaintiff. *William H. Clark*, (*Edward H. Hawke, Jr.*, and *Chas. A. O'Neill*, of counsel,) for defendant.

LAWRENCE, J. This action was brought to compel the removal of a dumping board, located on the west side of pier 12, East river, and to restrain the city from using or permitting the use of said pier, or any portion thereof, for dumping purposes; it being claimed that the same is a public nuisance, which causes special injury to the plaintiff, who is, as the owner of the premises 42 South street, entitled to a portion of the wharfage of the easterly side of said pier, and to a portion of one-half of the wharfage of the outermost end of the pier. The allegation in the complaint, that the dumping board is a nuisance, is denied in the answer of the defendants; and it is alleged that, under the laws of the state, the defendants are entitled to maintain and use the westerly half of the pier in question for dumping purposes. The proper disposition of this case depends upon the examination and construction of various statutes, to which I shall now refer. Chapter 367 of the Laws of 1881, entitled "An act to create a department of street cleaning in the city of New York, and to provide for the cleaning of the streets of said city, for the removal of snow and ice therefrom, and for the collection of ashes, garbage, and street sweepings, and the disposal of the same," creates a new department under the city government, entitled the "Department of Street Cleaning," the head of which department is designated as the "Commissioner of Street Cleaning." The fourth section of said act provides that "the department, bureau, or city officer, authority, or authorities which shall, from time to time, have the management and control of the public docks, piers, and slips of said city, shall designate and set apart for the use of said commissioner suitable and sufficient slips, piers, and berths in slips, located as the said commissioner may require, and such as shall be convenient and necessary for his use in executing the duty hereby imposed upon him, excepting slips, docks, and piers on the East river set apart for the use of canal-boats. The said commissioner may, with the approval (in writing) of the board of estimate and apportionment, lease piers, slips, or wharves for the necessary purpose of the duties by this act conferred, whenever suitable piers, slips, or wharves owned by or under the control of the city cannot be obtained, or are not set apart and designated, as in this section provided." This section was re-enacted in the consolidation act, (chapter 410 of the Laws of 1882,) in which it appears as

sections 706 and 728 of that act, the difference between the two sections being that the last paragraph of section 4 of the act of 1881 is omitted in section 728, while it is retained in section 706. By chapter 249 of the Laws of 1875, (section 3,) entitled "An act to regulate the use of slips, wharves, and piers in the city of New York," it is provided as follows: "It shall not be lawful to interfere with the free public use, as now enjoyed, or to permit the use as a dumping ground, of any wharf, pier, or slip, or bulk-head adjacent thereto, in the navigable waters of the East river, in the city of New York, which has heretofore been used for the loading and discharging of sailing vessels regularly employed in foreign commerce, and having a draft of more than eighteen feet of water; and the provisions of this act shall not apply to any such wharf, pier, or slip: provided, however, that nothing in this section contained shall apply to any wharf, pier, slip, or bulk-head now covered by any existing shed permitted by said department of docks, or reserved for a special use by any existing law." The twelfth section of the act of 1881, creating the department of street cleaning, provides as follows: "The several provisions of chapter six hundred and seventy-seven of the Laws of eighteen hundred and seventy-two, and of section sixty-seven of chapter three hundred and thirty-five of the Laws of eighteen hundred and seventy-three, and all other acts and parts of acts inconsistent herewith, are hereby repealed." The provisions of section 3 of the Laws of 1875, just referred to, are, in my opinion, plainly inconsistent with the provisions of section 4 of the act of 1881, creating the department of street cleaning; and as the only restriction upon the power to designate slips, piers, and berths in slips as dumping grounds, contained in the act of 1881, is an exception as to slips, docks, and piers on the East river, set apart for the use of canal-boats, (for which purpose it is not claimed that this pier was ever reserved,) it would seem that in the year 1881 there was no existing restriction upon the power of the city authorities to designate the portion of the pier in question which belonged to the city of New York for the use of the commissioner of street cleaning in the execution of the duties of his office. It appears that in the year 1881 the pier in question was substantially repaired, and that the city and the property owners each contributed one-half towards the expenses incurred. It also appears that prior to July 13, 1881, the commissioner of street cleaning requested the commissioners of the department of docks to designate and set apart for the uses and purposes of the street-cleaning department the westerly side and one-half of the outermost end of the said pier 12, and that at a meeting of said commissioners, held on the 13th day of July, 1881, the westerly side of said pier was set apart and designated as requested. It also appears that in February, 1882, the defendants caused to be constructed, under the authority aforesaid, on the westerly half of said pier, a dumping board for the use of the department of street cleaning. As I understand and construe the laws which then existed, the action of the dock department and the street-cleaning department was at that time strictly in accordance with the law; the pier in question never having been set aside for the use of canal-boats, and the third section of the act of 1875 having been repealed by the twelfth section of the act of 1881, as being inconsistent with the provisions of the fourth section of the latter act. In 1882, on the 1st of July, however, the consolidation act was passed, in which not only the fourth section of the act of 1881 reappears as the 706th and 728th sections of that act, as before stated, but in which also the third section of the act of 1875 reappears as its 773d section. It is this fact which, to my mind, presents the only question of embarrassment as to the power of the city authorities to do what they have done. Reflection, however, and an examination of the statute, satisfies me that the powers conferred by the 706th and 728th sections of the consolidation act are not to be considered nullified or abrogated by the 773d section of that act. The three sections must be construed together, and the court should not declare that it was the intention of the legislature to re-

peal sections 706 and 728 by the enactment of section 773, unless forced to do so. The rule which must govern in this case is well stated by VAN BRUNT, P. J., in *Weiler* v. *Newbach*, 47 Hun, 166. That was a case in which two sections of the Code of Civil Procedure appeared to be in direct conflict with each other. The learned justice said, at page 168: "There being this conflicting legislation upon the same subject, in the same statute, it is necessary to ascertain, if possible, what the legislative intention was. It is well settled that, in the interpretation of statutes, the great principle which is to control is the intention of the legislature in passing the same, which intent is to be ascertained from the cause or necessity of making this statute, as well as other circumstances. A strict and literal interpretation is not always to be adhered to; and, where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter. It is the spirit and purpose of a statute which have to be regarded in its interpretation, and if these find fair expression in the statute it should be so construed as to carry out the legislative intent, even though such construction is contrary to the literal meaning of some provisions of the statute. A reasonable construction should be adopted in all cases where there is a doubt or uncertainty in regard to the intention of the law-makers. * * * The object of all rules of construction being to ascertain the meaning of the language used, and it being unreasonable to impute to the legislature inconsistent intents upon the same general subject-matter, what it has clearly said in one part must be the best evidence of what it has intended to say in another." When the consolidation act was passed, the westerly part of pier 12 had been set aside under existing provisions of law, as we have already seen, as a dumping ground; and, although the 773d section of the consolidation act uses the exact language of the act of 1875, and limits the exemption from the prohibition therein contained to a special use existing in 1875, I think the plain intention of the legislature was, when the two preceding sections, 706 and 728, are taken into consideration, to limit that exemption to a special use existing at the time of the passage of the consolidation act. Any other construction would, in effect, repeal and nullify the powers conferred upon the city authorities by sections 706 and 728 of said act, which, as we have seen, were taken from chapter 367 of the Laws of 1881, which, by its twelfth section, plainly repeals as inconsistent therewith the third section of the act of 1875, which has now become section 773 of the consolidation act. Chapter 509 of the Laws of 1889 cannot affect the question under consideration, because that act was not designed to have a retroactive effect, and also because at that time the westerly half of pier 12, East river, had been for several years used as a dumping ground. Chapter 435 of the Laws of 1883 does not aid the plaintiff, because, if I am right in my construction of the act of 1881 and of the consolidation act, the westerly half of the pier in question had been reserved for a special use under an existing law, and was, therefore, within the exception contained in the act of 1883.

Assuming, then, that the city authorities under a correct interpretation of the statutes were authorized to select the westerly half of the pier in question for the use of the street-cleaning department, I am prepared to hold that the plaintiff has failed to make out a case which entitled him to the relief which he seeks. Places must be selected for the purposes of the street-cleaning department in order that the health of the citizens may be preserved and maintained, and the inconvenience to which one individual or a few individuals may be subjected by reason of the selection of a particular pier for the purposes of the street-cleaning department cannot be used to thwart or retard that department in the prosecution of its business. Cases kindred in character to that now under consideration have been frequently before the courts, one of the most notable of such cases being that of *Phœnix* v. *Commissioners*, 12 How. Pr. 1, decided by the general term of the superior court, Judge

DUER delivering the opinion.   The legislature had provided by chapter 474 of the Laws of 1855, entitled "An act for the protection of immigrants, second-class, steerage, and deck passengers," that "the commissioners of emigration shall, from time to time, designate some one place in the city of New York, as they shall deem proper, for the landing of emigrant passengers, and it shall be lawful for such passengers to be landed at such places so designated by the commissioners of emigration." Section 6.   Messrs. Phoenix and others brought the action above referred to for the purpose of obtaining an injunction to restrain the commissioners of emigration from converting Castle Garden into a depot for the landing of emigrants, and it was claimed that the use of the garden for that purpose would amount to a nuisance. Judge DUER said: "And the first inquiry here is whether, under existing circumstances, we have any right to entertain the question of nuisance at all.   I am satisfied, upon reflection, that we have no such right.   I am satisfied that the question has already been settled, and by an authority that we are bound not only to respect, but obey.   It has been settled by the act passed by the legislature on the 13th of April last.   It cannot be doubted that the legislature intended, by the passage of this act, to relieve the commissioners of emigration from the difficulties and embarrassments in which the decision of Mr. Justice HURLBUT, in *Brown* v. *Mayor, etc.*, 3 Barb. 256, had involved them, and for that purpose to clothe them with fuller powers than they had before possessed; and it is this intention, unless the act can be pronounced a nullity, that we are bound to see shall not be defeated."   See 12 How. Pr. 13; also, *Bohan* v. *Gas-Light Co.*, 122 N. Y. 29, 25 N. E. Rep. 246, and cases cited.

There are other grounds upon which, I think, judgment should be rendered in favor of the defendants in this case.   Even if it be conceded that the use of the westerly half of the pier in question be a dumping ground is an unauthorized nuisance, if it is necessary that it should exist in order that the municipal authorities may exercise the powers conferred upon them for the benefit and protection of the health of the whole body of citizens, no court of equity should interfere by way of injunction unless it be shown to its satisfaction that the plaintiff would sustain, from the continuance of the alleged nuisance, not only special, but irreparable, injury.   In the case of *Health Dept.* v. *Purdon*, 99 N.Y. 241, 1 N. E. Rep. 687, RUGER, C. J., says: "Courts will not in all cases interfere by way of injunction to restrain the continuance of an illegal trade, the abatement of a nuisance, or the prosecution of a dangerous employment.   *Wolcott* v. *Melick,* 11 N. J. Eq. 204; *Attorney General* v. *Insurance Co.,* 2 Johns. Ch. 371.   *   *   *   Whatever source of jurisdiction is appealed to, the rule governing its exercise is the same, and the court will inquire not alone as to the unlawfulness or offensiveness of the act complained of, but also as to its extent, the circumstances surrounding its exercise, and the degree of danger to be apprehended from its continuance."   It was said in the case of *Jordan* v. *Woodward*, 38 Me. 424: "It is not every violation of the rights of another which may be ranked under the general head of ʻnuisanceʼ which will authorize the interposition of this court by means of an injunction.   It must be a case of strong and imperious necessity, or the right must have been previously established at law, or it must have been long enjoyed without interruption."   In this case the plaintiff does not show any special damage to himself which cannot be repaired, nor for which he cannot be compensated by an ordinary action at law.   The defendants are responsible for any damage which he may have sustained, and under the authority just cited, and numerous other cases to the same effect, I think the plaintiff has failed to make out a case in which the extraordinary power of an injunction should be exercised.   Finally, it is perfectly clear that there must be some place of temporary deposit for street refuse, before it can be conveyed beyond the city limits.   In the selection of any place for such de-

posit some one person must necessarily be subjected to some inconvenience; but the proposition I do not think can be maintained that, because of that inconvenience, the use of the place of deposit should be restrained, and thereby the health of the whole community possibly endangered. For these reasons I am of the opinion that the defendants are entitled to judgment of dismissal of the complaint upon the merits, with costs.