THE HEALTH DEPARTMENT OF THE CITY OF NEW YORK et al., Appellants, *v.* JAMES PURDON et al., Respondents.

Courts will not, in all cases, interfere by injunction to restrain the continuance of an illegal trade or business; to require the exercise of this equitable power as a matter of right, it must also be made clearly to appear that the trade or business is either dangerous to human life, detrimental to health, or the occasion of great public inconvenience.

* *Post,* p.   .

The provisions of the New York city Consolidation Act (§§ 636, 637, 646, chap. 410, Laws of 1882), giving courts jurisdiction to interfere by injunction to restrain nuisances in that city, has not changed the rule. By the act it must be made to appear that the injunction is needed, among other things to prevent "serious danger to human life, or serious detriment to health."

In an action brought to restrain the sale of certain teas, it appeared, and the court found, that the teas were adulterated to some extent with offensive and noxious substances, and their possession for the purpose of sale was a nuisance ; but the court found that there was no sufficient evidence to prove that the use of the teas was "dangerous to human life, or detrimental to health, or unwholesame," or that the injunction was needed to prevent serious danger to human life, or detriment to health. *Held,* that there was no irreconcilable repugnancy in the findings, and that the relief sought was properly denied.

*It seems* that where the findings of a trial court are apparently inconsistent, it is the duty of the appellate court, if possible, to reconcile them, and give effect to the real meaning and intent of the court in making them.

(Argued April 20, 1885 ; decided June 2, 1885.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 1, 1884, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term. (Reported below, 19 J. & S., 109.)

This action was brought to restrain defendants from selling certain packages of teas known as "Pingsueys teas."

The facts, so far as material, are stated in the opinion.

*W. P. Prentice* for appellants. There was a clear legal right to the remedy of injunction in this case, and the judgment of the court below is reviewable here. (*People, ex rel.* v. *Common Council of Syracuse,* 78 N. Y. 56 ; *Howell* v. *Mills,* 53 id. 322 ; N. Y. City Cons. Act of 1882, §§ 636, 637, 646, 570, and Laws 1867, chap. 956, § 6 ; Laws 1881, chap. 407, p. 553.) The acts of the defendants were a public nuisance, under the definition of the statute. (Laws of 1867, chap. 956, § 6 ; N. Y. City Cons. Act of 1882, § 636 ; *Health Department* v. *Police Department,* 9 J. & S. 324 ;

*Catlin* v. *Valentine*, 9 Paige, 675 ; *Brady* v. *Weeks*, 3 Barb. 151 ; Wood on Nuisances, 476, § 769 ; id. 813 ; *Smith* v. *Cumming*, 2 Pars. 92 ; *Att'y-Gen'l* v. *Butt*, 5 Vesey, 129 ; *Att'y-Gen'l* v. *Nichol*, 16 id. 338 ; 2 Whart. Cr. L., § 2370 ; *Rex* v. *Dixon*, 3 Maule & S. 11 ; *McKeon* v. *See*, 51 N. Y. 306 ; Sedg. on Stat. and Const. Law, 577, note ; *Christopher* v. *Mayor, etc.*, 13 Barb. 567 ; *Debaun* v. *Mayor, etc.*, 16 id. 392 ; *Trenor* v. *Jackson*, 15 Abb. [N. S.] 51, 115.) The tea in question having been adulterated plaintiffs were entitled to have the sale of it enjoined. (N. Y. Cons. Act of 1882, §§ 636, 646 ; *Dennis* v. *Eckhardt*, 3 Grant, 302 ; *Goodrich* v. *People*, 3 Park. Cr. 622 ; 2 Whart. Cr. L., § 2370 ; 2 Story's Eq. Jur., §§ 921–927 ; *People* v. *Sturtevant*, 9 N. Y. 269 ; *Rex* v. *White*, 1 Burr. 337 ; Wood on Nuisances, 11, 12, 13, 34, 71 ; *Rex* v. *Dixon*, 3 Maule & S. 11 ; 48 L. T. Rep. [N. S.] 223 ; *Banbury* v. *Page*, 45 id. 759 ; 8 Q. B. 97 ; 28 Alb. L. J. 291 ; *Fitzpatrick* v. *Kelly*, 8 Ct. of Q. B. 337 ; *Roberts* v. *Egerton*, 9 id. 494.) Whenever a question of fact is found contrary to what the undisputed evidence requires, a legal error is committed which may be corrected by this court upon appeal. (39 N. Y. 117 ; 40 id. 169 ; *Howell* v. *Mills*, 53 id. 322 ; *Fellows* v. *Northup*, 39 id. 117 ; *Putnam* v. *Hubbell*, 42 id. 106 ; *Meyer* v. *Amidon*, 45 id. 169 ; *Oberlander* v. *Spiess*, id. 175.) Where the findings of fact conflict, the defeated party is entitled to those most favorable to him and may rely upon them in aid of the exceptions to the conclusions of law. (*Schwinger* v. *Raymond*, 83 N. Y. 193 ; *Bonnell* v. *Griswold*, 89 id. 137.) It is within the police powers of the State to prevent by law the having or offering for sale within the State of adulterated food or drugs, or unwholesome food. (*R. R. Co.* v. *Husen*, 5 Otto, 472 ; *Phelps* v. *Racey*, 60 N. Y. 14 ; Potter's Dwarris, 444–467 ; *People, ex rel. Barlow*, v. *Curtis*, 50 N. Y. 326.) The constitutional question has long been settled in our State in favor of these powers. (*Met. B'd of Health* v. *Huster*, 37 N. Y. 661 ; *Polinsky* v. *People*, 73 id. 65 ; *Phelps* v. *Racey*, 60 id. 9 ; *Blazier* v. *Miller*, 10 Hun, 436 ; *Boyd* v. *Alabama*, 94 U. S. 646 ; *Met. B'd of Erie*

v. *Barrie*, 34 N. Y. 633 ; *The Beer Co.* v. *Massachusetts*, 97 U. S. 28 ; *Stone* v. *Mississippi*, 101 id. 814 ; *Fertilizing Co.* v. *Hyde Park*, 97 id. 650.) A decision of the board of health is conclusive when it has heard the parties, and should not be set aside on conflicting affidavits. (*Cook* v. *City of Buffalo*, 16 Week. Dig. 8.) A court of equity has jurisdiction to restrain and abate a nuisance by injunction, even though the acts constituting the nuisance are in violation of a statute which in a separate clause provides a penalty. (*Livingston* v. *Van Ingen*, 9 Johns. 571 ; *Thomson* v. *N. Y. & H. R. R. Co.*, 3 Sandf. Ch. 625 ; Sedg. on Stat. and Const. Law, 93 ; *President, etc. W. & W. T. Co.* v. *People*, 9 Barb. 161.)

*George H. Forster* for respondents. The power of the board of health to abate nuisances or to obtain injunctions when needed to prevent serious danger to human life, detriment to health or great public inconvenience, touching any matter or thing to which the health laws relate, does not help plaintiffs in this case. (*Roberts* v. *Egerton*, L. R., 9 Q. B. 494.) The provision of the Constitution of the United States in article 1, sections 8 and 10, with relation to foreign commerce and import, make it entirely clear that the power of Congress to regulate commerce with foreign nations is exclusive. (*Gibbons* v. *Ogden*, 9 Wheat. 1 ; *Brown* v. *State*, 12 id. 419 ; *Welton* v. *State*, 91 U. S. 275 ; *R. R. Co.* v. *Husen*, 95 id. 465 ; *Low* v. *Austin*, 13 Wall. 29 ; *Chy Lung* v. *Freeman*, 92 U. S. 275 ; *Henderson* v. *Mayor, etc.*, id. 259 ; *Inman S. S. Co.* v. *Tinker*, 94 id. 238 ; *Cooley* v. *Bd. of Wardens*, 12 How. [U. S.] 299 ; *Mobile* v. *Kimball*, 102 U. S. 691 ; *Tel. Co.* v. *Texas*, 105 id. 460.) There was no greater reason for enjoining the sale of the teas in question than of all the fifty or sixty millions of pounds of green teas which are imported annually, as they are all artificially colored in the process of manufacture in Japan and China, by mineral substances. (*Doellner* v. *Tynan*, 38 How. 176 ; *D. & H. C. Co.* v. *Lawrence*, 2 Hun, 163 ; *People* v. *Meach*, 14 Abb. [N. S.] 429 ; *Burbank* v. *Fay*, 5 Lans. 397.)

RUGER, Ch. J.   The fact that the teas, the sale of which this action was brought to restrain, were adulterated, and that their possession for the purpose of sale to the general public was a nuisance subjecting the offenders to an indictment, and in case of sale, to actions for penalties for selling adulterated goods, cannot be successfully controverted; and yet this fact alone is insufficient to support the action.   The plaintiffs have thereby established but one of the elements necessary to entitle them to the relief demanded.   Courts will not in all cases interfere by way of injunction to restrain the continuance of an illegal trade, the abatement of a nuisance, or the prosecution of a dangerous employment. (*Wolcott* v. *Melick*, 3 Stockt. 204; *Attorney-General* v. *Utica Ins. Co.*, 2 Johns. Ch. 371.)   Its power, however, to do so in case of the exercise of any trade or business which is either illegal or dangerous to human life, detrimental to health, or the occasion of great public inconvenience, is not only conferred by the provisions of the statute, but belongs to the general powers possessed by courts of equity to prevent irreparable mischief and obviate damages for which no adequate remedy exists at law. (§§ 636, 637 and 646, N. Y. Cons.; Act of 1882; Story's Eq. Jur., §§ 921, 924; Eden on Inj., chap. 11.)   Whatever source of jurisdiction is appealed to the rule governing its exercise is the same, and the court will inquire not alone as to the unlawfulness or offensiveness of the act complained of, but also as to its extent, the circumstances surrounding its exercise, and the degree of danger to be apprehended from its continuance.   It was said in the case of *Jordan* v. *Woodward* (38 Me. 424): "It is not every violation of the rights of another which may be ranked under the general head of nuisance, which will authorize the interposition of this court by means of an injunction.   It must be a case of strong and imperious necessity, or the right must have been previously established at law, or it must have been long enjoyed without interruption."   The ground of equity jurisdiction in such cases has been said to be to "prevent irreparable mischief, and also to suppress offensive and vexatious litigation." (Story's Eq. Jur., §§ 923, 925.)   He also says: "That in all cases of this

sort courts of equity will grant an injunction to restrain a public nuisance only in cases where the fact is clearly made out upon determinate and satisfactory evidence. For if the evidence be conflicting and the injury to the public doubtful, that alone will constitute a ground for withholding this extraordinary interposition. (§ 924a.) It was held in *Eastman v. Company* (47 N. H. 78), that "the plaintiffs should of course show by their proof a case of strong and clear injustice, of pressing necessity and imminent danger of great and irreparable damage, and not of that nature for which an action at law would furnish a full and adequate remedy." In the *Earl of Ripon v. Hobart* (3 Myln. & Keen. 179), it was said by Lord Chancellor BROUGHAM that "it is always to be borne in mind that the jurisdiction of this court over nuisances by injunction at all is of recent growth, has not till lately been much exercised, and has at various times found great reluctance on the part of the learned judges to use it even in cases where the act or thing complained of was admitted to be directly and immediately hurtful to the complainant." The language used in the Consolidating Act giving courts jurisdiction to interfere by injunction to restrain nuisances in the city of New York has not changed the established rule as to the imminency of the danger to be apprehended, or the necessity of such a remedy to avoid irreparable injury. By that act it must appear that the injunction is "*needed*" among other things to prevent " serious danger to human life or serious detriment to health," and unless the facts of this case bring it within the requirement that it is imperatively *necessary* to prevent the consequences described, the plaintiffs have failed to show such a case as entitles them, as matter of right, to the remedy demanded.

If we regard the findings of the court below alone we see that, although it has found the teas in question were adulterated and colored to some extent with offensive and noxious drugs and substances, it still reaches the conclusion that no sufficient evidence had been produced to prove that the use of said teas was "dangerous to human life or detrimental to health and unwholesome, or that the injunction prayed for is needed to

prevent serious danger to human life or detriment to health, or that the said teas, or the selling or offering for sale of the same, is a nuisance." It is claimed by the appellants that these findings are inconsistent and that they should be considered in their most favorable aspect for the appellants. When the findings of the trial court are apparently inconsistent, it is the duty of the appellate tribunal, if possible, to reconcile them and give effect to the real meaning and intent of the court in making them. (*Bennett* v. *Bates*, 94 N. Y. 360.) But the application of this rule is not called for here as we find no irreconcilable repugnancy in the findings. It is quite possible that the substances found in the teas in question did not exist in such proportions or quantities as rendered their use necessarily dangerous or unwholesome to human health or life, even though some of them were in their nature deleterious and unhealthy and might, under certain circumstances and if absorbed into the system in sufficient quantities, be both unwholesome and dangerous. It results therefrom, unless the undisputed evidence shows the conclusion reached by the court, that the use of these teas was not unwholesome, is erroneous, that there is no ground upon which the judgment appealed from can be disturbed.

The case on the part of the plaintiff was sought to be made out by the introduction of expert evidence alone, and this was to the effect that the use of the teas in question as a beverage was, in the opinion of the witnesses, deleterious and unwholesome. These opinions were based wholly upon theoretical knowledge of the nature and character of the substances used in adulteration and their supposed effect upon the human system when used in connection with the teas as a beverage. Many, if not all of them, testified they never knew, neither had they heard of a case where the use of teas like those in question had proved injurious to the health of those using them. These opinions were undoubtedly competent to prove the subject of the issue, but they were certainly of no greater value as evidence than the testimony of witnesses who had used the teas, as to their practical effect upon the human sys-

tem when imbibed as a beverage, and did not constitute conclusive evidence of the facts in issue. On the other hand, the evidence of the defendants tended strongly to show not only that all green teas were similarly adulterated, but that their use as a beverage was not thereby rendered unwholesome. A number of dealers of long experience in the business of buying and selling teas were called and testified uniformly to the effect that in all of their experience they had never heard of a case where the use of such teas had proved injurious to those using them. One of the defendants had drank steadily and daily for a number of months of the teas in question and had discovered no injurious effects therefrom. An expert of established character for scientific attainments and learning was also called by the defendants, and testified that he drank of the tea in question and found it very palatable and followed by no ill effects, and that he had carefully examined and analyzed samples of the tea and, in his opinion, there was nothing injurious or unwholesome in its use.

To say the least, this evidence raised a question of fact for the consideration of the court below and one upon which it might well conclude that the sale and use of these teas would not produce irreparable mischief or a necessity for the interposition of the court by way of injunction.

The question raised as to whether the sale of these teas was not protected from any interference therewith, by the State courts, under the laws of the State, by the acts of Congress authorizing their importation, is one which, in the view we have taken of the case, it is unnecessary to discuss or decide.

We are of the opinion that the judgment should be affirmed.

All concur.

Judgment affirmed.