Anna Maria Doyle, Appellant, *v.* The Metropolitan
Elevated Railway Company et al., Respondents.

The provision of the Code of Civil Procedure (§ 1015) authorizing the
court to direct a reference "to take an account and to report to the
court thereon either with or without the testimony  *  *  *  and also
to determine upon a question of fact arising in any stage of the action
*  *  *  except upon the pleadings" does not authorize a reference
simply to take testimony, but to determine a question of fact, and report
such determination, and this only to determine some question of fact
which arises collaterally, not upon the pleadings.

Upon trial of an action to restrain defendants from operating their elevated
railroad in a street in front of plaintiff's premises, after hearing proof in
regard to plaintiff's title, etc., the court, against defendant's objection,
appointed a referee to take testimony as to the value of any easements
and property taken or interfered with by defendants and as to the amount
of rental loss and to report the same with his opinion; as to the value of
the easements the referee was directed to estimate only the impairment
of light, air and access.    *Held* (Gray, J., dissenting), that the court had
no power to direct a compulsory reference for the purpose stated; and
so, that the order was erroneous.

Sickels—Vol. XCI.        64

As to whether the legislature has power under the Constitution to confer upon the courts power to grant such a reference *quære.*

*Camp* v. *Ingersoll* (86 N. Y. 433) ; *Drexel* v. *Pease* (129 id. 96), distinguished.

(Argued December 12, 1892; decided January 17, 1893.)

APPEAL from so much of an order of the General Term of the Court of Common Pleas for the city and county of New York, made December 5, 1892, as reversed an order of the Special Term denying a motion to vacate and vacating an order of reference.

This action was brought to obtain equitable relief by injunction and also to recover damages on account of the maintenance and operation, by defendants, of an elevated railroad in front of plaintiff's premises on Sixth avenue, in the city of New York.

Further facts are stated in the opinion.

*William G. Peckham* for appellant. Under the stipulation, and to controvert Judge PRYOR's final, sweeping decision, that because of the Constitution there can be no reference, either "to report with an opinion" or "to determine and report," it makes less difference to the property owners whether this reference practice be upheld solely where the reference is ordered to "determine" or where the reference is ordered "to report with opinion." The characterization and classification of the species of the reference is less material. The great number of decisions of the court, and of other courts, authorize a reference in these cases of either nature, or of both natures. (*Camp* v. *Ingersoll*, 86 N. Y. 433; *Methodist Society* v. *B. R. R. Co.*, 46 Hun, 533; 2 Rumsey's Pr. 229 ; *Muhlenbrinck* v. *Pooler*, 40 Hun, 526; *C. S. S. Co.* v. *Clark*, 7 Civ. Pro. Rep. 183 ; *McMahon* v. *Allen*, 10 How. Pr. 384 ; *Elmore* v. *Thomas*, 7 Abb. Pr. 70 ; Code Civ. Pro. § 837.)

*Julien T. Davies* for respondents. The order of reference was made without jurisdiction and the General Term did not err in setting it aside. (*Kamp* v. *Kamp*, 59 N. Y. 218;

*People ex rel.* v. *Day*, 53 id. 410 ; *People* v. *N. T. Co.*, 31 Hun, 25 ; *Brink* v. *R. F. Ins. Co.*, 2 T. & C. 550 ; *Read* v. *Lozin*, 31 Hun, 289 ; *Phillips* v. *Gorham*, 17 N. Y. 273 ; *F. N. Bank* v. *Houston*, 44 Hun, 567 ; *Thayer* v. *McNaughton*, 117 N. Y. 111 ; *Street* v. *Rothschild*, 12 Daly, 95 ; *Barnes* v. *West*, 16 Hun, 68 ; *O'Reilly* v. *City of Kingston*, 30 id. 508 ; *Randall* v. *Sherman*, 131 N. Y. 669 ; *Van Zandt* v. *Cobb*, 10 How. Pr. 348 ; *Scott* v. *Williams*, 23 id. 493 ; *Rathbun* v. *Rathbun*, 3 id. 139.)

O'BRIEN, J.    On the trial of this action, after hearing some proof in regard to the plaintiff's title to the premises described in the complaint, and the existence, location and operation of the defendants' railway in front of the premises, the court, against the objection of defendants' counsel, directed an order to be entered appointing a referee to take testimony as to the value of any of the easements and property taken, appropriated or interfered with by the defendants, for the maintenance and operation of the railway in front of plaintiff's premises, and as to the amount of the rental loss, if any, which the plaintiff had sustained therefrom, and to report the same to the court, with his opinion thereon ; but, as to the value of the fee, the referee was directed to estimate only on the impairment of light, air and access.    The order further provided that upon the filing of the referee's report either party might apply to the judge, before whom the trial was commenced, and who presided when the order was made, upon two days notice, for the continuation and closing of the trial.    The action was equitable in its nature.    A property owner seeks to enjoin the maintenance and operation of the railway in front of her premises, and to recover the damages that she has sustained in consequence of its erection and operation, by loss of rents and permanent depreciation in value of her real estate. The form of the action and the principles upon which it rests have recently been ·much discussed, and are familiar to the courts and the profession.    The complaint alleged, among other things, that in consequence of the wrongful acts of the

defendants, which were particularly set forth, the fair market value of the plaintiff's premises was greatly diminished, and that the rental value was for the same reason diminished to the extent of thirty-five hundred dollars annually since the erection of the railway, and that the total damages which the plaintiff had sustained from these causes were, at the time of the commencement of the action, thirty-six thousand dollars. These allegations were all put in issue by the answer of the defendants. The relief demanded was that the amount of the plaintiff's damages, in consequence of the existence and operation of the railway structure in front of her premises, in the street, be ascertained and judgment against the defendants awarded her therefor, and that the defendants be perpetually enjoined and restrained from making any further erections in the street in front of the plaintiff's premises, and from further obstructing and incumbering the street, and from maintaining, continuing or operating the railway, and that they be compelled, by the judgment of the court, to remove the same. The General Term has reversed the order on the ground that the court did not possess the power to direct a compulsory reference in the case for such a purpose. The arguments upon the appeal suggest two questions :

1. Whether power to make the order has been conferred upon the court by any provision of the Code ; and 2. Whether the legislature, under the provisions of the Constitution, has power to confer such authority upon the courts.

In regard to the last question it is sufficient to say that we do not think a decision of it is necessary to the determination of this appeal. It cannot be doubted that the Constitution has imposed some restraints upon the power of the legislature to provide for taking the testimony in an equity case by reference, but it is not so easy to fix the precise limits of legislative power in that regard. This results from the nature of the provisions inserted in the Constitution of 1846 and the condition of the law on the subject as it existed before that time. The Constitution abolished the Court of Chancery and undertook to reform the tedious and expensive methods of taking

testimony in equity cases that existed under it, through masters and examiners.    It provided that " the testimony in equity cases shall be taken in like manner as in cases at law."    (Art. 6, § 8.)    Abolished the office of examiner in chancery (Art. 14, § 8), and enacted that " except as herein otherwise provided for the legislature shall have the same power to alter and regulate the jurisdiction and proceedings in law and equity that they have heretofore exercised.    (Art. 6, § 8.)    The courts have frequently referred to the change produced by these provisions of the Constitution with respect to the power of the courts to direct references for the purpose of taking testimony, and incidently to the power of the legislature to authorize them, though the effect of the change has never been pointed out with much precision.    (*Phillips* v. *Gorham,* 17 N. Y. 273 ; *Farmers' National Bank* v. *Houston,* 44 Hun, 567 ; *Sullivan* v. *Sullivan,* 9 J. & S. 525 ; *Rathbun* v. *Rathbun,* 3 How. Pr. 139 ; *Draper* v. *Day,* 11 id. 441.)

When there are other questions in a case that determine the decision without challenging the constitutional validity of a statute or instituting an inquiry as to the limitations upon the power of the legislature, it is best to let the decision rest upon the other questions and leave the discussion as to the power of the legislature over the subject to some occasion when it becomes necessary to the decision of the case.    If the legislature has not in fact assumed to confer power upon the courts to make such an order as that now under review then this appeal must fail.    Whatever power has been conferred to order references to take testimony is to be found in certain sections of the Code to which reference will now be made.    Section 827 authorizes special references in certain matters, but obviously does not authorize a reference to take testimony in an action after issue joined, or to dispose of any issue arising in a litigated case.    Section 1011 provides for a reference by consent, and to such references only.    Section 1013 provides for compulsory references in actions at law or in equity, where the trial will require the examination of a long account on either side, and will not

require the decision of difficult questions of law. It confers no power to order a reference for the purpose of taking testimony, but to try and determine or find some fact involved in the issue. Moreover the action must be of such a character that the trial will involve the examination of a long account, and this account must be the immediate object of the action. It must be directly not collaterally involved. (*Camp* v. *Ingersoll*, 86 N. Y. 433; *Randall* v. *Sherman*, 131 id. 669; *Thayer* v. *McNaughton*, 117 id. 111.)

Clearly, there is no authority to be found in this section for the appointment of the referee in this case, and the plaintiff's counsel does not attempt, as we understand him, to sustain the order under any of its provisions.

Section 1015 authorizes a reference upon incidental questions in a case, not to take testimony merely, but "to take an account and report to the court thereon, either with or without the testimony." These words imply a power in the referee to decide, or at least to make, findings, though the ultimate decision remains with the court. It will be borne in mind that there is no claim in this case that an account is involved, and no reference was made to take an account, but to reduce the testimony that the parties might offer to writing and report it to the court with an opinion. The referee cannot decide any question, and the court, in making its decision upon the question of damages, must act upon the testimony reported to him by the referee without seeing or hearing the witnesses. In the trial of disputed questions of fact, the apparent intelligence and candor of the witnesses, on one side or the other, is frequently a most important element in the process of ascertaining the truth, and parties are entitled, when not otherwise prescribed by law, to the benefit of the appearance of the witnesses, and their examination in the presence of the judge who is to pass upon the weight and effect of the testimony and finally determine the question. If, in a case of this kind, the testimony can be taken before a referee and passed upon by the court, the expense and delays, which were looked upon as intolerable evils under the old

Chancery system, have been practically continued. The last clause of section 1015 remains to be considered, as that was evidently the provision under which the order of reference in question was made, and that is the principal authority now invoked to sustain it. That clause authorizes a reference in an equity case " to determine and report upon a question of fact, arising at any stage of the action, upon a motion, or otherwise, except upon the pleadings." This clause contains no authority to order a reference to take testimony, but to *determine* a question of fact and report such determination to the court. The power to decide as to the weight and effect to be given to the testimony of witnesses is thus left with the judicial officer in whose presence the examination was had. This view alone would exclude the power which the learned trial judge exercised in this case. But the words of the exception at the end of this clause constitute an important limitation upon the power to refer even questions of fact for determination, as no question can be referred which arises on the pleadings. The reference must be to determine some fact that arises collaterally not directly. As to all disputed questions of fact, upon which the parties have directly joined issue, and which arise upon the pleadings, the trial must be had and the witnesses examined before the tribunal which is to make the decision in the case. In this case the question of damages, with respect to which the testimony was to be taken before a referee, was one of fact and even if by any construction it could be held that this last clause authorized a reference merely to take testimony, which is not perceived, there would still remain the objection that the question arises on the pleadings, and is one of the direct and principal issues in the case. While the action assumes an equitable form, and is sustained upon equitable principles, it is impossible to lose sight of the fact that its main purpose and object is the recovery of the damages to plaintiff's property. The injury and consequent loss are fully set forth in the complaint and denied by the answer, and the proof of damages was an indispensable element of the plaintiff's case, as it cannot be

supposed that a court of equity would entertain jurisdiction to
restrain a trespass that was not shown to have produced any
damage or loss to the plaintiff. This aspect of the case is not
changed by the circumstance that in this form of action the
issue of damages is incidental to the general jurisdiction of
equity to grant relief by injunction. It is true that equity
assumes the jurisdiction necessary to administer complete jus-
tice and incidentally draws into the case all questions that
might have been the subject of successive actions at law, still
the damages constitute a direct and vital issue in the case
which, in every just sense, arises upon the pleadings. (*Galway*
v. *M. E. R. Co.*, 128 N. Y. 132; *Roberts* v. *N. Y. E.
R. Co.*, Id. 455; *Lynch* v. *M. E. R. Co.*, 129 id. 274;
*Shepard* v. *M. R. Co.*, 131 id. 215.) If authority is neces-
sary to sustain this proposition it is fairly deducible from
the reasoning and general doctrine of the above cases though
this precise question was not involved.

The learned counsel for the plaintiff has referred us to
numerous cases in various courts and to works on practice as
authority for the reference made in this case. To review them
all and attempt to point out their legitimate bearing upon the
question that we are now concerned with, would be impracti-
cable and would justly subject this opinion to the charge of
prolixity. In discussing the power to order references under
some specific section of the Code in a particular case the limi-
tations of other sections applicable to other cases have not
always been marked with accuracy and hence *dicta* may be
found that would seem to favor the plaintiff's contention, but
with the benefit of full argument on the question involved in
this appeal, and after as careful an examination as we have
been able to give it, we think that there is no authority in the
Code for the order made at the trial in this case.

Among the cases cited there are two in this court, much
relied upon by plaintiff's counsel, that, with respect to their
bearing upon the question, require some notice.

In *Camp* v. *Ingersoll* (*supra*) the action was upon an
award of arbitrators, whereby the defendants were required to

execute to the plaintiff's assignor their bond obligating them-
selves to pay the value of certain shares of stock to be ascer-
tained in the manner designated in the award. A compulsory
reference was ordered on the ground that the value of the stock
could not be ascertained without an examination as to the
assets of the corporation that had issued it, and hence a long
account was involved. This court reversed the order on the
ground that the action was upon the award, and the examina-
tion into the condition of the corporation was a collateral
matter. The soundness of this decision cannot be questioned.
Judge Folger was impressed with the difficulty of trying
the question before the court, and suggested that in the
end the court might relieve itself of the tedium of such a
trial by a reference of that question, under the last clause of
section 1015, to take the testimony and report. What the
trial court could do in a certain contingency was a question
not then before this court. But if, as the learned judge sug-
gested, the case was one in equity, and an inquiry as to the
corporate assets was collateral and did not arise upon the
pleadings, a reference under section 1015 was within the
power of the court. So that the case really furnishes no
authority to justify the order in the case at bar.

*Drexel* v. *Pease* (129 N. Y. 96) was a peculiar case, but the
order of reference was after an interlocutory judgment and was
upheld in this court under section 1013 upon the principle that
an account was involved in the case. Moreover the court was of
the opinion that the parties who appealed from the order had
taken the benefit of it and virtually assented to that mode of
disposing of the question. The last paragraph of the opinion
assumes that there was an account involved within the mean-
ing of section 1013. The plaintiff had obtained all the relief
demanded and was out of the case. The controversy was
between defendants, and the issues tried were made by their
answers. It became necessary to state the account of a
receiver, who was not a party to the action, to ascertain the
value of goods shipped by one merchant to another for sale,
and the consideration of certain debts held by banks upon

which they had obtained attachment liens. It was held that a long account was, therefore, involved, and in such cases the power to order a reference under section 1013 is clear. It may be that section 1015 also authorized such an order, as it was made after the interlocutory judgment, and the *account* was necessary for the information of the court, but in any event it is not authority upon the question now under consideration. In the case at bar it is not claimed that an account is involved. It is a compulsory reference to take testimony as to damages before any other question in the case had been decided.

The decision of the General Term reversing the order is right, and should be affirmed, with costs.

GRAY, J. (dissenting). I am not able to perceive any satisfactory reason for overruling (for I do not think we can distinguish) the authority of *Camp* v. *Ingersoll* (86 N. Y. 433); where the deliberate opinion of this court seems to give even ampler warrant for the practice now disapproved. I have supposed that under our decisions the allegations of damage did not strictly raise questions of fact, or were considered otherwise than as evidencing the substantial nature of the injurious acts complained of and to warrant the equitable relief, which was the issue and the object of the action. Nor am I able to see any good reason for depriving the courts of a very useful and convenient power; which is obviously within the spirit of the Code; if not, in the view of my brethren, technically comprehended in its language. Therefore I cannot concur.

All concur with O'BRIEN, J., except GRAY, J., dissenting. Order affirmed.