SIMON WORMSER et al., Appellants, *v.* JOHN NICHOLAS BROWN et al., as Trustees, etc., and SOPHIA AUGUSTA SHERMAN, Respondents.

1. NEW YORK CITY — BAY WINDOW — PROJECTION INTO STREET. A bay window extending over the building line into a street is an erection or projection within the meaning of section 688 of the New York Consolidation Act (Chap. 410, Laws of 1882), giving power to the commissioners of public parks over erections and projections on certain streets.

2. STATUTES, GENERAL AND SPECIAL. When a statute contains separate provisions, one special and the other general, the latter will not be construed as including the former, but the special statute will be regarded as in the nature of an exception to the general one.

3. NEW YORK CITY — STREET — PERMIT FOR BAY WINDOW — PARK COMMISSIONERS. Power to issue a permit to erect bay windows extending over the street line within 350 feet of the boundary lines of Central Park is given to the board of park commissioners by section 688 of the New York Consolidation Act (Chap. 410, Laws of 1882), and this is not limited by section 86 of that act giving the common council power to make ordinances to prevent encroachments on streets and public places.

5. MUNICIPAL CORPORATIONS — DELEGATION OF POWER TO. Legislative power to authorize structures in the streets, which, without such authority and under the common law would be held to be encroachments or obstructions, may be delegated to the governing body of a municipal corporation.

6. APPEAL — JUDGMENT VARIANT FROM FINDING — INTERFERENCE WITH LIGHT AND AIR. A judgment denying an injunction against interference with light and air will not be disturbed upon the ground that it is inconsistent with a finding that bay windows complained of interfere with and affect the light and air coming to plaintiff's house, especially where there is no finding or proof of any pecuniary damage or material or irreparable injury by reason of the erection of such windows.

7. DENIAL OF INJUNCTION — ABSENCE OF SUBSTANTIAL DAMAGE. The discretion of the trial court in denying relief by injunction will not be disturbed on appeal in the absence of any proof or finding of substantial damage.

*Wormser* v. *Brown*, 72 Hun, 93, affirmed.

(Argued March 11, 1896; decided April 7, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon

an order made October 13, 1893, which affirmed a judgment in favor of defendants dismissing the complaint upon the merits, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George Hoadly* and *Louis W. Wormser* for appellants. The finding of the Special Term that the erection of the bay windows interferes in a substantial degree with the light and air coming to the plaintiffs' house and affects the same remaining unimpaired, and not even excepted to, and without impeachment by cross-appeal or otherwise, as matter of law, leaves the defendants without any legal excuse for their acts. (*Stillwell* v. *M. L. I. Co.*, 72 N. Y. 388; *Sickles* v. *Flanagan*, 79 N. Y. 224; *Hallock* v. *Scheyer*, 33 Hun, 111; *Callanan* v. *Gilman*, 107 N. Y. 360; *White's Bank of B.* v. *Nichols*, 64 N. Y. 65; *Cunningham* v. *Fitzgerald*, 138 N. Y. 165; *In re Adams*, 141 N. Y. 297; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 145; *Abendroth* v. *M. R. Co.*, 122 N. Y. 1; *Powers* v. *M. R. Co.*, 120 N. Y. 178.) The attempt to convert the plaintiff's property to private uses, even if authorized by legislative authority, would be unconstitutional and void, and the attempt to convert it to public uses without compensation would, in like manner, be unconstitutional. (*Kane* v. *N. Y. El. R. R. Co.*, 125 N. Y. 186; *Abendroth* v. *M. R. Co.*, 122 N. Y. 1; *Kellinger* v. *F. S. S. R. R. Co.*, 50 N. Y. 206; *Reining* v. *N. Y., L. & W. R. Co.*, 128 N. Y. 157; *Taylor* v. *Porter*, 4 Hill, 140; *In re Albany Street*, 11 Wend. 149; *People* v. *Morris*, 13 Wend. 325; *In re John & Cherry Streets*, 19 Wend. 659, 676; *Varick* v. *Smith*, 5 Paige, 137; *Embury* v. *Conner*, 3 N. Y. 511.) Plaintiffs are entitled to the remedy they seek by injunction. (*Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98; *Galway* v. *M. R. Co.*, 128 N. Y. 132; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 82; *Pappenheim* v. *M. E. R. Co.*, 128 N. Y. 436.)

*John L. Cadwalader* for respondents. The park department had complete authority to give permission to erect the bay windows in question, and has in due form exercised that authority. (Laws of 1882, chap. 410, §§ 84, 86, 688; Laws of 1873, chap. 850, § 1; *Hoey* v. *Gilroy,* 129 N. Y. 132; *People* v. *Charbineau,* 115 N. Y. 433; Laws of 1888, chap. 115; *People ex rel.* v. *B. & O. R. R. Co.,* 117 N. Y. 150; *Jorgensen* v. *Squires,* 144 N. Y. 280; *Garrett* v. *Jones,* 65 Md. 260; *Goldstraw* v. *Duckworth,* L. R. [5 Q. B. D.] 275.) The court will take judicial notice of the facts bearing upon this case. (*King* v. *Gallun,* 109 U. S. 99; *Babbage* v. *Powers,* 130 N. Y. 281, 291; *Brown* v. *Piper,* 91 U. S. 37; *Terhune* v. *Phillips,* 99 U. S. 592; *Ah Kow* v. *Nunan,* 5 Sawy. 552; *Slater* v. *Jewett,* 85 N. Y. 61; *E., C. & B. Co.* v. *Avery,* 83 N. Y. 31; *Bookman* v. *N. Y. E. R. R. Co.,* 137 N. Y. 302; *Frace* v. *N. Y., L. E. & W. R. R. Co.,* 143 N. Y. 182; *Skelly* v. *N. Y. E. R. R. Co.,* 7 Misc. Rep. 88.) While if there was power in the department of parks to authorize the erection of the bay windows, there is, of course, no power in the court to enjoin such erection, nevertheless, if there had been no such power so to do, and a permit had been granted, a court of equity in this case, in view of all the facts, would not grant an injunction. (*Trustees C. College* v. *Thacher,* 87 N. Y. 317; *Health Department* v. *Purdon,* 99 N. Y. 237; *Gray* v. *M. R. Co.,* 128 N. Y. 499; *Clarke* v. *L. R. R. Co.,* 18 Barb. 350; *Peters* v. *Delaplaine,* 49 N. Y. 362; *Welsh* v. *Taylor,* 50 Hun, 137; 1 High on Injunc. [2d ed.] § 13; *Woodruff* v. *Paddock,* 130 N. Y. 618; *Brush* v. *M. R. Co.,* 26 Abb. [N. C.] 73.) The court will always endeavor to reconcile and explain any supposed inconsistencies in findings if, by so doing, the judgment may be sustained. (*Bennett* v. *Bates,* 94 N. Y. 354; *Health Department* v. *Purdon,* 99 N. Y. 237; *Green* v. *Roworth,* 113 N. Y. 462; *Sheldon* v. *Sherman,* 42 N. Y. 484; *Newman* v. *Frost,* 52 N. Y. 422; *Caswell* v. *Davis,* 58 N. Y. 233; *Meyer* v. *Lathrop,* 73 N. Y. 315; *Everson* v. *City of Syracuse,* 100 N. Y. 577; *Ostrander* v. *Hart,* 130 N. Y. 406; *Ogden* v. *Alex-*

*ander*, 140 N. Y. 356; *First National Bank* v. *Chalmers*, 144 N. Y. 432.)

Martin, J.    Since the thirtieth of September, 1876, the plaintiffs have been the owners of a lot on the east side of Fifth avenue, in the city of New York, which is twenty-five feet in width, one hundred feet in depth, and upon which there is a four-story building, occupied by them as a residence.    The three defendants, who are described as trustees, are the owners of two lots on the same avenue, fifty feet in front, one hundred feet in depth, which adjoin the property of the plaintiffs and extend to the southeast corner of Sixty-fifth street.    Fifth avenue is one hundred feet in width, and was opened in 1838. The front of the plaintiffs' and defendants' lots is on the easterly line of the avenue and opposite Central Park.    The premises in that vicinity are principally used for residential purposes, and their proximity to the park adds to the value of the property for that purpose.    Several months prior to this action the defendants commenced the erection of a building upon their lots, which included two bay windows extending six feet beyond the easterly building line, but within the stoop line of the street.    On the ninth of March, 1892, the commissioners of public parks granted the defendants a permit to erect such windows.    The consent of the fire department was also obtained.    Thereupon the defendants proceeded with the construction of their buildings and bay windows, in accordance with the permit granted.    No opposition to their erection was made by the plaintiffs until the following November. This action was commenced about November 11, 1892, to restrain the defendants from erecting or maintaining the windows in question.

The trial judge found that the erection of the windows interfered to a substantial degree with the light and air coming to the plaintiffs' house and affected the same, and that they affected and interfered with certain views from its windows. But he refused to find that the view, light and air added greatly to the value of the premises, or that any obstruc-

tion or interference therewith was a special, great or irreparable injury to the enjoyment of the plaintiffs' premises, or that it very considerably affected the value thereof. He also declined to find that by reason of the construction of such windows the plaintiffs' premises were deprived of light and air, and of a view from the front windows, as the same had been theretofore enjoyed, or that the plaintiffs' claimed rights had been interfered with, impaired or obstructed, or that the plaintiffs would thereby suffer irreparable damage in respect of their premises. As conclusions of law he held that the commissioners of the department of public parks had full power and authority to issue the permit granted by them, and to allow the defendants to erect such windows; that they did not constitute a nuisance or unlawful structure, but were duly authorized in accordance with law, and that the plaintiffs were not entitled to an injunction restraining their erection or completion. He thereupon directed a judgment dismissing the complaint on the merits, with costs. The judgment thus directed was affirmed by the General Term of the Supreme Court, and from that judgment this appeal was taken.

The appellants contend that the department of public parks had no authority to grant the defendants the permit issued to them; that the power to grant such permit was vested in the common council alone, and, hence, that the building of the windows was wholly unauthorized and illegal. The question whether the permit issued to the defendants by the department of public parks was valid depends for its solution upon the provisions of the New York Consolidation Act (Laws 1882, ch. 410). Section 688 provides: "The determination of the lines of curb and other surface constructions in all the streets and avenues within the distance of three hundred and fifty feet from the outer boundaries of any public park or place, which is now or hereafter may be under the control and management of the department of public parks, is vested in the said department; and the said department shall also have power to plant trees and to construct, erect and establish seats, drinking fountains, statues and works of art whenever they

may deem it for the public interest so to do on the said parts
of said public streets and avenues; and the said parts of said
public streets and avenues shall at all times, after the same are
opened, be subject to such rules and regulations in respect to
the uses thereof and erections and projections thereon as the
said department may make therefor." The defendants' prem-
ises and the portion of Fifth avenue upon which they front
were within three hundred and fifty feet of the outward
boundaries of Central Park, which is under the control and
management of the department of public parks, and, conse-
quently, that department had the control over that portion
of Fifth avenue given by that section of the statute.
The language of the section is clearly broad enough
to apply to a projection that may extend into any of
the streets or parts thereof that are within the limits men-
tioned. That department is given the control of all the
streets within those limits, and they are expressly made sub-
ject to such rules and regulations in relation to erections and
projections thereon as it may make. That the defendants'
windows are erections or projections, within the meaning of
that section, there can be no doubt. So that unless there is
some other statute or valid ordinance which clearly indicates
that section 688 was not intended to apply to such an erection
or projection, it must follow that the authority to regulate
them was vested in the department of public parks. Thus,
we are led to inquire whether there is any other provison of
statute, or any ordinance of the city authorized by statute,
which is so far inconsistent with the provisions of that sec-
tion, or so specific in its terms as to indicate a clear intent to
limit the language of section 688 so that it should not include
such a projection. The appellants insist that the general
words of that section are limited by sections 34 and 36 of the
ordinances of the city, which prohibit any person from con-
structing any projection or bay window beyond the house line
on any street, avenue or public place within the corporate
limits of the city, unless permission therefor is given by the
common council. Section 86 of the Consolidation Act, which

confers upon the common council the only power it possesses to make ordinances upon this subject, provides: " The common council shall have power to make ordinances, not inconsistent with law and the Constitution of this state, and with such penalties as are provided in the last section, in the matters and for the purposes following, in addition to other powers elsewhere especially granted, namely:  *  *  *  4.  To prevent encroachments upon and obstructions to the streets, highways, roads, and public places, not including parks, and to authorize and require the commissioner of public works to remove the same ; but they shall have no power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof.  *  *  * "  It will be observed that section 86 does not confer any authority upon the common council to make or enforce an ordinance that is in conflict or inconsistent with any existing law.  An ordinance that is inconsistent with law is clearly not within the authority conferred upon the common council by section 86, and, consequently, if this ordinance was intended to affect the provisions of section 688 it would not, because, so far as it is inconsistent with that section, it is without authority of law and, hence, inoperative.  But it is not to be supposed that such was its purpose or intent.  The common council had control over all the streets of the city except such as were within a specified distance of its parks and public places.  As to the latter, the control was conferred upon the department of public parks. If these ordinances are construed as relating to the streets which are under the control of the common council, they are given the effect that must have been intended, as it will not be presumed that the common council intended to pass an ordinance that was unauthorized and which it had no power to make or enforce.  Moreover, subdivision 4 of section 86 of the Consolidation Act does not authorize the common council to make ordinances to prevent encroachments or obstructions in public parks.  They are excepted by that subdivision from the authority conferred upon the common

22

council. By virtue of section 688 the streets that are within three hundred and fifty feet of the boundary lines of Central Park are under the control of the department of public parks, and may well be regarded as a part thereof. Presumably the object of the provision of subdivision 4 of section 86, which excepted from the authority of the common council the power to make ordinances to prevent encroachments or obstructions in the parks, was to avoid any conflict between the council and the department of public parks, and that section was doubtless enacted with the fact in view that the streets in and around the parks for the distance mentioned were placed under the sole and exclusive control of the latter. When these provisions of the statute are read and considered together, it becomes obvious, we think, that it was the intent of the statute to exclude the parks together with the streets in and around them from the jurisdiction of the common council, and to place them under the exclusive control of the department of public parks. Again, that portion of the statute which relates to the parks and streets within three hundred and fifty feet of their boundaries, is special and applies only to a specified class, which constitutes a very limited proportion of the streets of the city ; while the ordinances and the statute in pursuance of which they were passed, are general and relate to all the streets except those referred to in section 688. When a statute contains separate provisions, one special and the other general, the latter will not be construed as including the former, but the special statute will be regarded as in the nature of an exception to the general one. (*Hoey* v. *Gilroy*, 129 N. Y. 132 ; *City of Poughkeepsie* v. *Quintard*, 136 N. Y. 275, 280.) When so construed, the statutes and ordinances relating to this subject are in harmony, and effect is given to each. These considerations lead to the conclusion that the power to regulate the erections and projections upon Fifth avenue at the point where the plaintiffs' and defendants' buildings stand, rests in the department of public parks, and that the trial court properly held that the commissioners of that department

had power to issue to the defendants a permit to erect the windows in question and that they cannot be regarded as an unlawful obstruction or encroachment upon the street.

The legislature, by virtue of its general control over public streets and highways, has power to authorize structures in the streets which, without such authority and under the common law, would be held to be encroachments or obstructions, and this power it may delegate to the governing body of a municipal corporation. (*Hoey* v. *Gilroy*, 129 N. Y. 132; *People* v. *B. & O. R. R. Co.*, 117 N. Y. 150, 155; *Jorgensen* v. *Squires*, 144 N. Y. 280.) In the case of *People* v. *B. & O. R. R. Co.* an action was brought to compel the defendant to remove a shed it had erected upon a pier, and to restrain it from continuing the use of it or from placing upon the pier any structure which would be calculated to interfere with its use by the public. The defendant had obtained from the department of docks a permit to construct the shed, in pursuance of which it commenced and had nearly completed its erection, when an action was brought in the name of the People, upon the solicitation of private persons engaged in business in the vicinity, to compel its removal. The permit granted by the dock department was based upon an act of the legislature allowing the maintenance of the pier where authority to do so had been obtained from that department. The pier was regarded as a public highway, and the shed or building could be closed and locked so that it was an appropriation of the highway to a *quasi* private use. Yet in that case it was held that the shed could be legally constructed. In the *Hoey* case the action was to restrain the defendant, as an officer of the city charged with removing obstructions in the street, from removing an iron awning which covered the whole sidewalk, and extended beyond the curbstone twelve inches. It was built in conformity with an ordinance of the common council which was authorized by statute, and it was in that case held that the remedy for such use of the streets was with the city government, and not in the courts. In the *Jorgensen* case it was held that it was competent for the legislature to authorize a

limited use of sidewalks in front of buildings for stoops, cellar openings or underground vaults for the more convenient and beneficial enjoyment of the adjacent premises. (See, also, *Garrett* v. *Janes*, 65 Md. 260; *Butt* v. *Imperial Gas Co.*, L. R. [2 Ch. App.] 158; *Goldstraw* v. *Duckworth*, L. R. [5 Q. B. Div.] 275.) As the bay windows erected by the defendants did not extend beyond the building line of the street a greater distance than the stoop upon the plaintiffs' adjoining property, and, therefore, there was no practical interference with the use of the street, it would seem that upon the authority of the cases cited the plaintiffs' complaint in this action was properly dismissed.

A further contention of the appellants is that the trial court having found that the erection of the bay windows interfered to a substantial degree with the light and air coming to the plaintiffs' house, affected the same, and interfered with certain views from the windows, it follows, as a matter of law, that they are entitled to the relief demanded. It will be observed that this finding is very general. A finding that the defendants' windows interfere with the light and air and affect the same, is extremely indefinite, especially where there is no finding or proof that the plaintiffs have suffered, or will suffer, any pecuniary damage or material or irreparable injury by reason of the erection of such windows. Such a finding can hardly furnish a basis for judicial action and is, we think, too uncertain to justify this court in interfering with the decision of the court below. An interference with the view from the plaintiffs' windows would not entitle them to the relief sought. (*Aldred's Case*, 9 Coke, 58; *Butt* v. *Imperial Gas Co.*, L. R. [2 Ch. App.] 158.) The trial court having decided upon the evidence before it that the plaintiffs were not entitled to an injunction against the defendants, and the General Term having affirmed that decision, it should not, we think, be disturbed upon the ground that the judgment was inconsistent with that particular finding of fact.

We think there is another ground upon which the judgment of the General Term should be affirmed. The granting

or refusing of equitable relief by way of injunction depends to a great extent upon the particular facts in each case, and is largely discretionary with the court in which the action originates. (*Jerome* v. *Ross,* 7 Johns. Ch. 315 ; *T. & B. R. R. Co.* v. *B., H. T. & W. Ry. Co.,* 86 N. Y. 107, 123 ; *Shepard* v. *M. R. Co.,* 131 N. Y. 215 ; *Doyle* v. *M. E. R. Co.,* 136 N. Y. 505, 511 ; *Bookman* v. *N. Y. Elevated Railroad Co.,* 147 N. Y. 298 ; *Health Dept. of N. Y.* v. *Purdon,* 99 N. Y. 237 ; *Gray* v. *M. R. Co.,* 128 N. Y. 499, 509 ; *O'Reilly* v. *N. Y. Elevated R. R. Co.,* 148 N. Y. 347.)  In the last case, where the question involved was the right of the plaintiff to an injunction against the operation of an elevated railroad, constructed in a public street in the city of New York by authority of law, this court held that it should not be granted at the suit of an abutting owner, on proof of the wrongful appropriation of the easements of light, air and access, where the plaintiff failed to show any substantial monetary damage to his property, or loss suffered, by reason of the defendant's acts. In the *Gray* case it was said : "The amount of damage was thus quite material.  Unless the court had found it to be substantial, it could, in the exercise of its discretion, have withheld the injunction and left the plaintiff to his remedy at law. An equity court is not bound to issue an injunction when it will produce great public or private mischief merely for the purpose of protecting a technical or unsubstantial right. (*McHenry* v. *Jewett,* 90 N. Y. 58 ; *Health Department* v. *Purdon,* 99 id. 237 ; *Jeffers* v. *Jeffers,* 107 id. 650 ; *Genet* v. *D. & H. C. Co.,* 122 id. 505 ; *Thomas* v. *M. Mutual Protective Union,* 121 id. 45 ; *MacLaury* v. *Hart,* Id. 636.)  The injunction is so dependent upon the damages that the General Term could not with propriety reverse the judgment as to damages and permit it to stand as to the injunction."  In the *Doyle* case it was said : "While the action assumes an equitable form, and is sustained upon equitable principles, it is impossible to lose sight of the fact that its main purpose and object is the recovery of the damages to plaintiff's property. *  *  *  And the proof of damages was an indispensable

·element of the plaintiff's case, as it cannot be supposed that a court of equity would entertain jurisdiction to restrain a trespass that was not shown to have produced any damage or loss to the plaintiff."· As in this case there was no proof or finding that the plaintiffs suffered any substantial damage, the doctrine of the cases cited amply justifies the conclusion that the question whether the court would grant or withhold relief by injunction was discretionary with the trial court.

The judgment should be affirmed, with costs.

All concur (ANDREWS, Ch. J., in result).

Judgment affirmed.