The President of the borough of Manhattan has been ordered to serve notice upon the owner of a building ordering her to remove certain alleged street encroachments which are said to extend beyond the building line. What they are is stated with particularity. One, for instance, is a box stoop "extending at right angles from the building line on Lexington Avenue, about seven feet on both sides thereof into the public highway on Lexington Avenue, said box stoop being about 16 feet wide and 10 feet high." Another is a bay window described with equal minuteness. If these structures are not then removed by the owner, Mr. Miller is directed to remove them himself at her expense.
This order is the result of an application for a peremptory mandamus made by Mr. Green as a citizen and taxpayer of New York. Owning, as he does, adjoining property, he says such alleged encroachments constitute both a public and a private nuisance. Of the latter allegation we need take no notice. This proceeding would not be appropriate to protect his individual interests. But the court below, notwithstanding denials by the defendant, that the owner has in fact created a public nuisance, or apparently that her erections encroach upon the street, has assumed the commission of a wrong by her. And this, when she is not a party to the proceeding and has been given no opportunity to disprove the assertion. Should Mr. Miller tear down a portion of her building, if in fact no illegal encroachments exist, he is a trespasser. No order such as this will shield him. (People exrel. Copcutt v. Board of Health, 140 N.Y. 1.) Naturally he objects.
No such order can be sustained without the presence of the owner in court. The city may at all times abate *Page 92 
a public nuisance. No decree of the court is required. But this power rests upon the fact that a public nuisance does exist. So, too, where the official is negligent, the court doubtless may by mandamus compel him to do his duty. It will not require him to interfere with private property, however, unless concededly it is a nuisance or unless the owner has an opportunity to be heard upon the subject.
Here we have nothing but the claim of the petitioner. This stoop or this bay window may project over the building line. The owner has not been permitted to raise this issue. They may exist with the rightful permission of the authorities. She has not said.
We know of no controlling authority for a peremptory order of mandamus under such circumstances. Indeed, many cases in this State and elsewhere are to the contrary. (People ex rel. Cooke
v. Stewart, 77 App. Div. 181; People ex rel. Title Guarantee T. Co. v. Ruoff, 159 App. Div. 819; People ex rel. Francis
v. Common Council, 78 N.Y. 33; People ex rel. Bacon v. N.C.Ry. Co., 164 N.Y. 289; Louisiana v. Jumel, 107 U.S. 711,727; Kent v. County Comrs. of Essex Co., 27 Mass. 521; Stateex rel. Sheridan v. Van Winkle, 43 N.J. Law, 579; People exrel. Cropsey v. Townsend, 218 N.Y. 615.) In People ex rel.Ackerman v. Stover (138 App. Div. 237) certain obstructions had been already declared a public nuisance by this court in an action brought against the owner.
But we find even more serious difficulty with this order. We are told that an encroachment over the street line, even the slightest, is a public nuisance. No revocable license may be given for its maintenance. Any taxpayer may compel the authorities to abate it. If so, the consequences are far reaching, and we hesitate to come to such a conclusion without the most careful thought.
We are not met here with a municipal order requiring all structures to be set back to the street line. Doubtless, the city may revoke any license it may have given. But *Page 93 
it makes no objection. We are faced with the proposition that no discretion whatever exists. The city of New York may not permit any occupation whatever of the space in or over a public street.
The title of the streets of New York is held by the city primarily in trust to promote traffic and transportation. An unauthorized use of them by individuals is illegal. But of them the Legislature has paramount control. Certainly it may allow their use for any public purpose not inconsistent with street needs — for the erection of telegraph poles (American Rapid Tel.Co. v. Hess, 125 N.Y. 641) — for surface, elevated or underground railways — for many other things. It may close them entirely, if that be wise. It may do more. It may authorize structures in public streets for private benefit, which are incident to ordinary street uses, which do not unreasonably interfere with traffic, and which have been sanctioned by long usage. An encroachment without such a permit, with it they are such no longer. (Bradley v. Degnon Contracting Co., 224 N.Y. 60; Matter of McCoy v. Apgar, 241 N.Y. 71; Wormser v.Brown, 149 N.Y. 163.)
It is to be observed, however, that we deal solely with the authorized occupation of the street, regarded as a public nuisance. If such occupation is injurious to private rights, as to them the legislative power does not extend. (Cogswell v.R.R., 103 N.Y. 10; Ackerman v. True, 175 N.Y. 353;Bradley v. Degnon Contracting Co., supra.)
The Legislature having the power to permit as against the public such uses of the street, may confer it upon the city of New York. (Matter of McCoy v. Apgar, supra; People ex rel.City of N.Y. v. N.Y. Rwys. Co., 217 N.Y. 310; Hoey v.Gilroy, 129 N.Y. 132; Wormser v. Brown, supra; Jorgensen v.Squires, 144 N.Y. 280.)
The ultimate question, therefore, is whether such power has been in fact given to the city, for the opinion below states that the bay windows, areaways and stoop *Page 94 
complained of were erected by municipal consent granted in 1882. Further it fails to appear that the remaining structures have not existed for such a period that the like consent is to be implied.
The Greater New York Charter says that streets and other public places in the city shall be inalienable (sec. 71). No local authority may grant the right to occupy them permanently. (Ackerman v. True, 175 N.Y. 353.) The most it may give is a license, revocable under proper conditions, if that power be elsewhere conferred upon it. And the same thing was true before this express prohibition. There was never authority permitting the city to alienate any part of its streets.
A revocable license, however, is a different matter. For many years the streets have been bounded by a so-called building line. The location of this line appears on an official map. (Charter, sec. 438, etc.) For many years also some private use of street areas has been permitted. Stoops, steps, areaways, cellar openings, vaults, awnings, bay windows, cornices connected with adjoining buildings, and not unreasonably interfering with traffic, have all existed. As they must be removed on demand of the city in actions for specific performance, the existence of many have been held to make the title to the adjoining building unmarketable; but their presence has not been supposed to create a public nuisance whose removal would be compelled by the courts at the instance of any taxpayer.
Nor do they create such a nuisance if erected by permission of the city. In construing the charter we are not to forget long-continued custom and practice. We are to remember that a city has not only the powers specifically conferred but also such as are necessarily incident to or as may be fairly implied from those powers. (Village of Carthage v. Frederick, 122 N.Y. 268. ) General control of the streets is given to the Board of Aldermen. (Charter, sec. 50.) It may regulate their use for signs, awnings *Page 95 
and other purposes and the existence of "stoop lines" is recognized. There is also reference to "authorized structures, encroachments or obstructions" therein, and the issuance of revocable licenses therefor. "Stoop lines" were no innovation. (Consolidation Act, sec. 86.) All powers and duties of the Common Council or Aldermen of the several corporations united to form the greater city, possessed by them in 1897, unless otherwise provided by the charter, are conferred on the new board. (Sec. 42.) This board may adopt such ordinances as to buildings as it may think necessary and proper for the good government, order and protection of property and the preservation of peace and prosperity. (Sec. 43.) Further no enumeration of powers is to be held as limiting the legislative power of the board, unless specifically so provided. (Sec. 44.) The Building Code in force in 1902 is declared to be binding. (Sec. 407.) It with its amendments has the force of a statute. (City of New York v.Trustees, 85 App. Div. 355; affd., 180 N.Y. 527.) Article 9 of the Building Code adopted in 1915 deals with projections beyond the building line. It refers to areas, steps, columns and ornamental projections, cornices, awnings, fire escapes and vaults. For them revocable permits may be given. Finally it is said that "such parts of buildings which already project beyond the building line may be maintained as constructed until their removal is directed."
It is claimed, however, that these provisions are wholly unauthorized because of one sentence contained in section 50. "The Board of Aldermen shall not have the power to authorize the placing or continuing of any encroachment or obstructions upon any street or sidewalk, except the temporary occupation thereof during the erection * * * of a building." The same provision was in the Consolidation Act (sec. 86).
That means illegal or permanent encroachments or obstructions. That this is so is best illustrated by our *Page 96 
decisions. Cellar ways may be allowed by the city (Jorgensen v.Squires, supra). So may iron platforms (Murphy v. Leggett,164 N.Y. 121); newsstands (People ex rel. Pumpyansky v.Keating, 168 N.Y. 390); vaults and areaways (City of New York
v. de Peyster, 120 App. Div. 762; affd., 190 N.Y. 547; LincolnS.D. Co. v. City of New York, 210 N.Y. 34; Devine v.National Wall Paper Co., 182 N.Y. 565); awnings (Hoey v.Gilroy, supra); bay windows (Wormser v. Brown, supra;Heymann v. Steich, 201 N.Y. 578); bay windows and stoops (Broadbelt v. Loew, 162 N.Y. 642); stoops (Levy v. Hill,174 N.Y. 536); bay windows, oriel windows, show windows, stoops and porticos (Acme Realty Co. v. Schinasi, 215 N.Y. 495). Permits for some of these obstructions are expressly mentioned in the charter; others are not.
The result seems to be that while the city may not alienate its streets by any permanent grant or permission, yet it may give a revocable license to construct such as by long usage have become familiar to us as necessary or convenient for the enjoyment of abutting property, provided they do not unreasonably interfere with street traffic. Some permits are on their face so unreasonable that they are not allowed. Such are the right to store delivery wagons in the street (Cohen v. Mayor, etc.,113 N.Y. 532); or to place the wall of a building in the highway (Ackerman v. True, supra; City of New York v. Rice,198 N.Y. 124). Yet it may be observed that what was said in both these last cases was obiter. For in the former the action was brought to recover for private injuries and in the second it was brought by the city itself. In the Schinasi case, the opinion of Mr. Justice CLARKE, referred to here with approval, has reference to a masonry bay window, over the building line. He said it made the title of the property defective as the city might not give a permit that would allow its permanent retention as concededly it might not. Our reference on appeal to stoops, however, shows we did not regard it as *Page 97 
necessarily a public nuisance. It is always to be remembered that broad general statements in any opinion are to be read in connection with the facts of the particular case before the court.
The order of the Appellate Division and that of Special Term should be reversed and the petition dismissed, with costs in all courts.
CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.
Order reversed, etc.