STANDARD FASHION CO. v. SIEGEL–COOPER CO. et al.

(Supreme Court, Appellate Division, First Department.  November 10, 1899.)

1. CORPORATION—CONTRACT MADE WITHIN SCOPE OF AUTHORITY.
    A contract between a corporation, engaged in carrying on a large department store, and a pattern company, wherein it is agreed . that said corporation is to receive one-third of the moneys derived from the sales of patterns, as compensation for the use of space in the department store, and for the permission given to the pattern company to conduct its department in that space, and that said corporation will sell or allow to be sold no other patterns except those of said pattern company, is a contract made in the' ordinary course of business of such department store, and within the scope of its authority.

2. SAME—BY-LAWS—EFFECT ON CONTRACT MADE WITH THIRD PERSON.
    By-laws of a corporation engaged in carrying on a large department store do not affect contracts made with third persons, who relied on the apparent authority of the executive agents of such corporation.

3. SPECIFIC PERFORMANCE—RELIEF GRANTED—DECREE.
    Plaintiff and defendant entered into a contract whereunder plaintiff was to conduct a pattern department in defendant's establishment, and defendant agreed not to sell, or allow to be sold, on its premises, during the duration of the contract, any other patterns. Defendant permitted the sale of other patterns, in disregard of its contract. In an action for specific performance, the court decreed that defendant be enjoined from selling, or allowing to be sold, on the premises, during the duration of the contract,

any patterns except those made by plaintiff, with a certain condition, but declined to decree a specific performance of the affirmative provision of the contract, and awarded plaintiff damages in lieu thereof. *Held*, that the decree was proper.

4. SAME—ASSESSING DAMAGES AGAINST ONE NOT A PARTY TO CONTRACT.

In an action for the specific performance of a contract, damages resulting from a breach of such contract by a party thereto cannot be assessed against one not a party to the contract, and made a party to the action only because an injunction is asked to restrain such party, as well as the party to the contract, from doing a certain act in violation of the contract.

5. COMPULSORY REFERENCE.

Where, in an action for specific performance, damages are awarded plaintiff in lieu of a decree for specific performance, a compulsory reference to ascertain the amount thereof is not authorized, under Code Civ. Proc. § 1013, providing for compulsory references where the trial will require the examination of a long account and will not require the decision of difficult questions of law, nor under section 1015, providing for compulsory reference to determine and report on a question of fact not arising on the pleadings, as an examination of a long account is not required, and the amount of damages is a question of fact arising on the pleadings.

Appeal from special term, New York county.

Action by the Standard Fashion Company against the Siegel-Cooper Company and the Butterick Publishing Company, Limited, for specific performance of a contract. There was a judgment for plaintiff, and defendants appeal. Reversed.

The action is for the specific performance of a contract dated July 16, 1897, and executed July 19, 1897, the material parts of which read as follows:

"The Siegel-Cooper Company is hereby appointed an agent for the sale of Standard patterns and Standard fashion publications for a term of two years from the date the contract goes into effect; and said term to be extended from year to year thereafter, until closed by three months' notice in writing by either party, to be given within thirty days after said two years or any one year thereafter. The Standard Fashion Company agrees to conduct, at its own expense and risk, a pattern department on the ground floor of the Siegel-Cooper Company's store on Sixth avenue and Eighteenth street, New York City; said Standard Fashion Company furnishing its own employés, such employés to be subject to the employés' rules of the Siegel-Cooper Company. * * * Said Siegel-Cooper Company agrees not to sell, or allow to be sold, on its premises, during the duration of the contract, any other make of paper patterns. Siegel-Cooper Company agrees to pay over to the Standard Fashion Company two-thirds of all the moneys received from the sale of patterns and fashion publications, making weekly settlements with the Standard Fashion Company, said Siegel-Cooper Company to make no charge for cashiering; the remaining one-third to be the remuneration of said Siegel-Cooper Company for the permission to the Standard Fashion Company to conduct said department."

The defendants denied the making of the contract. Evidence upon that head was given at the trial, and the trial judge decided that the contract was "entered into" between the plaintiff and Siegel-Cooper Company, as alleged in the complaint. He thereupon rendered the following judgment, from which both defendants appeal:

"(1) That the defendant the Siegel-Cooper Company, its officers, agents, servants, attorneys, and workmen, be, and they are hereby, peremptorily enjoined and restrained from selling, or allowing to be sold, on the premises occupied by the said defendant the Siegel-Cooper Company, in the borough of Manhattan, in the city of New York, at Sixth avenue and Eighteenth street,

up to the 12th day of March, 1900, any paper patterns except those made by the plaintiff; and the defendant the Butterick Publishing Company, Limited, its officers, agents, servants, attorneys, and workmen, also be, and they hereby are, peremptorily enjoined and restrained to the same date from selling its paper patterns on the aforesaid premises of the said defendant the Siegel-Cooper Company at Sixth avenue and Eighteenth street, in the borough of Manhattan, city of New York,—all of which, however, is upon the condition that if the defendant the Siegel-Cooper Company shall, within two days after the entry of this judgment and service of copy thereof on the defendants' attorneys, serve upon the plaintiff or its attorneys a request that the plaintiff perform a certain contract bearing date the 16th day of July, 1897, made between it and the defendant the Siegel-Cooper Company, and the plaintiff shall fail within two days thereafter to serve upon the defendant the Siegel-Cooper Company or its attorneys a stipulation accepting such offer, and within said two days enter or offer to enter upon the specific performance of said contract on its part, then said injunction shall from thenceforth be and become in all respects inoperative; and in the event of such tender or such specific performance by the defendant the Siegel-Cooper Company, and its permitting specific performance of said contract by the plaintiff during the balance of the unexpired term thereof, the plaintiff shall take no damages against the said Siegel-Cooper Company for its breach in the past of the aforesaid agreement.

"(2) That Nelson Smith, Esq., counselor at law, be, and he hereby is, appointed referee for the purpose of taking proof against the defendant the Butterick Publishing Company, Limited, of all damages sustained by the plaintiff by reason of the breach of the aforesaid contract by the Siegel-Cooper Company; and for the further purpose of taking the same proof against the defendant the Siegel-Cooper Company, unless within two days from the entry of this judgment it gives the aforesaid stipulation; and, upon the coming in of the report of the said referee, final judgment shall be entered herein in the plaintiff's favor as against the said defendants, continuing the injunction hereby granted in full force and effect, and for the amount of the damages reported by the said referee, together with the plaintiff's costs and disbursements, and an extra allowance 'of five per cent. upon such sum as may be found to have been the damages sustained by the plaintiff by reason of the breach of the aforesaid contract, not exceeding one thousand dollars, and for the costs and disbursements of the said reference."

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Edward G. Perkins, for appellants.
John M. Bowers, for respondent.       ○

BARRETT, J.   This case has been through all the courts upon demurrer.   It was finally decided by the court of appeals, affirming this appellate division, that the complaint stated a good cause of action against both defendants.   157 N. Y. 60, 51 N. E. 408.   The issues of fact were then tried at special term, resulting in a judgment for the plaintiff, from which the defendants now appeal.   As the main questions of law presented by the complaint were finally settled by the court of appeals upon the demurrers, we will now confine ourselves to the questions arising upon the trial.   The defendants in their answer deny the making of the contract—formerly admitted by the demurrer—for the specific performance of which this action is brought.   The learned trial judge found, as matter of fact, that this contract was entered into by the parties, and the correctness of this decision is the first question presented upon this appeal.

We have gone over the evidence carefully, and, in our judgment, it is amply sufficient to sustain the plaintiff's allegation upon that head. The contract, though signed and sealed on behalf of the company by its general manager, Hogan, was to all intents and purposes made by its president, Siegel. Hogan had undoubted authority to negotiate for the contract, and also to make it, with the president's approval. Hogan himself testified that he could "make negotiations and suggestions in the business, and could carry them out, if the president agreed to it." That the president here assisted in the negotiations, and agreed to the terms of the contract, is established by a clear preponderance of evidence. Indeed, the negotiations were largely with Siegel. He pointed out to the plaintiff's president, Koewing, the importance to the latter's company of a contract with the Siegel-Cooper Company. He asked from Koewing extra inducements and terms because of the value of such a contract to the plaintiff as an advertisement. He was present when Koewing agreed that his company should itself conduct the pattern department, and give the Siegel-Cooper Company a percentage on the goods sold, as a commission. He looked over the written contract after it had been redrawn, in his own company's office, and made corrections in it. He even inserted in it an important condition with respect to the space to be occupied by the plaintiff between Thanksgiving Day and Christmas. He went all over it with Koewing just before it was signed, and explained to the latter the additional condition which he had inserted; and he was still actually in the room when Koewing sat down to sign it, leaving the room only when Koewing was in the act of signing. It is plain that Siegel left the room with knowledge that the completed contract was, with his full approval, about to be signed and delivered. The act of signing, under the circumstances, was a mere formality, which he left to the general manager. This is emphasized by what followed. Four days after the contract was signed, Hogan wrote to the plaintiff that the Siegel-Cooper Company intended to continue with the plaintiff's competitor, the defendant Butterick Company, and requested a surrender of the contract. It appears that during these four days Siegel negotiated for, concluded, and as president signed, a contract with the Butterick Company in entire disregard of his company's previous engagement with the plaintiff. Realizing the consequences of this conduct, Siegel insisted upon indemnity from the Butterick Company. He testified that he declined to execute the contract with the latter company until it gave him a paper in which we find the following remarkable provision:

"And whereas, in order to do so [that is, to continue the agency], it becomes necessary for the said party of the second part [the Siegel-Cooper Company] to decline to carry out a contract recently made, and now existing, between the said party of the second part and a pattern company other than party of the first part [the Butterick Company], the party of the first part will and does hereby assume any and all damages that may be recovered from said party of the second part by any suit at law that may be brought against them in consequence of the violation of the said contract with the aforementioned pattern company."

Thus Siegel insisted upon and accepted an agreement to indemnify his company against his own deliberate, and, we regret to have to say, dishonorable, breach of contract,—an agreement which speaks of the contract indemnified against as one "recently made and now existing." We say of the contract indemnified against, for the reason that there can be no doubt that the plaintiff was the pattern company referred to.

The contract with the plaintiff was not, as contended, out of the ordinary course of the Siegel-Cooper Company's business, nor did it virtually create a partnership, or anything in the nature of a partnership, between that company and the plaintiff. The Siegel-Cooper Company was to receive one-third of the moneys derived from the sales of patterns, simply as compensation for the use of space in the establishment and for the permission given to the plaintiff to conduct its department in that space. It admits, by not denying, the allegation of the complaint that "it is engaged in the business of selling all articles required by people for consumption or use, and occupies and carries on the greatest department store in the world." The contract in question is entirely in line with the methods adopted for the carrying on of such a business. It may accurately be said to be a contract made in the ordinary course of such a business. Contracts of the same general nature, varying in detail, were made by the Siegel-Cooper Company with regard to its birds and animal department; also with regard to the wine and liquors department. There was also a wall-paper contract. Space in the shop was rented by a dentist and a barber; also by a chemist and a florist. Some of these agreements were signed by the president; one by the general manager, Hogan; one by the Chicago book-keeper; a renewal of another by the secretary; one was not signed by the company at all; and one was oral. So far as the question of authority is concerned, there is but little difference between this business corporation and a partnership. Corporate form was evidently resorted to for the convenience of its members. There are but five members and directors. Two of these are the president, Siegel, and the general manager, Hogan; one is the secretary; another is the vice president, who lives in Chicago; and the fifth, Mr. Gerson Siegel, said to be the president's brother. The whole business here was in the hands of President Siegel and General Manager Hogan. It is idle to appeal to the by-laws of such a corporation, as affecting contracts made with third persons in reliance upon the apparent authority of its executive agents. As was said in Rathbun v. Snow, 123 N. Y., at page 349, 25 N. E. 380:

"By-laws of business corporations are, as to third persons, private regulations, binding as between the corporation and its members or third persons having knowledge of them, but of no force, as limitations per se, as to third persons, of an authority which, except for the by-law, would be construed as within the apparent scope of the agency."

The president, Siegel, was certainly clothed with apparent authority to make any contract for space in this great department shop, with a view to the sale therein of almost every conceivable kind of goods, or the transaction of almost every variety of business.

Such contracts were as much a part of its ordinary business as the purchases and sales of goods directly upon its independent account. We are not called upon to decide whether the general manager of this business, acting alone and independently, was, under all the circumstances, clothed with the same apparent authority as the president. It is sufficient to sustain the finding below that he was undoubtedly authorized to formulate and execute any contract upon the subject in question to which the president had agreed. Applying the well-settled rule of law already stated to the facts here presented, there can be no doubt that upon the signature of the contract in question by Hogan and Koewing, and its delivery thereupon to the plaintiff, the Siegel-Cooper Company became bound thereby.

This brings us to the more serious branch of the appeal, namely, that relating to the form of the decree. Specific performance of the affirmative provisions of the contract was not granted, because of the difficulty attendant upon enforcement, and because, to quote from the decision, "it would impose upon the court obligations which it should not assume." A conditional injunction was, however, granted, as we have seen in the preliminary statement of facts. The plaintiff has not appealed from these conditions, and the defendants cannot complain of them, because the court might well have granted an unconditional injunction. The learned counsel for the defendants seems to think that there is an intimation to the contrary in the opinion of the court of appeals upon the demurrer. We do not so understand that opinion. Judge Vann there observed that "the injunction when granted may not be absolute, but may be based on some equitable condition that will prevent either party from taking advantage of the other, such as the waiver by the plaintiff of the breach of the contract by the principal defendant." This was seemingly an illustration of one of the many conditions upon which an injunction might be granted in case the trial court, with all the facts before it, should consider that the unconditional enforcement of the negative provision of the contract might enable the plaintiff to take an unjust advantage of the principal defendant. Upon the whole case, however, as made by this record, we see no just ground for attaching any condition whatever—other than continuous readiness and willingness to perform upon the plaintiff's part—to the enforcement of this negative covenant. The plaintiff was clearly entitled to the benefits derivable from both the affirmative and the negative provisions of the contract. The court had jurisdiction with regard to both. It declined to exercise its jurisdiction as to one, solely because of the inconvenience of superintending complicated and extensive business details. But as Judge Vann observed (supra): "This fact does not deprive the court of jurisdiction, but justifies a refusal, in its sound discretion, to exercise it. It confers no right upon either party." The plaintiff, therefore, is rectus in curia. It brought its action in the appropriate forum, and it came into that forum with an undoubted equity on both sides of the contract. The court, then, in its discretion, declined to grant a part of the equitable relief to which the plaintiff was entitled. This declination did not proceed upon any infirmity in the plaintiff's

equity, but solely ab convenienti. But for the latter consideration, what measure of relief should the plaintiff have received? Plainly, both specific performance of the affirmative provision and an injunction against the breach of the negative covenant. And it would have been entitled to this full measure of relief upon the sole condition of continuous readiness and willingness to perform upon its part, thus securing to the Siegel-Cooper Company the benefits of the contract if it chose to accept them, and doing it, as well as the plaintiff, full and complete justice. Why, then, should not the plaintiff receive the substitute in damages which the court awards it, in lieu of performance in specie of the affirmative provision, and receive, in addition, the same injunction against a violation of the negative covenant as, but for the limitations upon the machinery of justice, would have accompanied the decree for performance in specie? In other words, damages plus the injunction, instead of performance in specie plus the injunction. Judge Vann spoke of this negative covenant as "severable." And clearly it was severable. If the plaintiff had been permitted, without let or hindrance, to enter upon the performance of the contract, and the Siegel-Cooper Company had thereafter, while performance was peaceably proceeding, installed the plaintiff's competitor in its immediate vicinity, would not the plaintiff have been entitled to an absolute injunction to stop the latter violation of its exclusive right, and yet be permitted to proceed, pari passu, with the general execution of the affirmative part of the contract? The waiver of damages for the violation of the negative covenant might then be an appropriate condition to attach to the granting of the injunction. But no court would think of requiring a party, under such circumstances, to waive his contract altogether. To follow the illustration to its legitimate sequence, there would seem to be no greater reason, when the violation of the negative covenant has been accompanied with a breach of the affirmative, for requiring a party to waive the latter as a condition of relief with respect to the former. Again, the covenants are not only severable, but they relate to different conditions,—one present and immediate, the other external and ulterior. It is true that the sale of the plaintiff's patterns in the Siegel-Cooper Company's establishment would undoubtedly be increased by the absence of competition. But that probability was not the sole consideration at which this negative covenant was aimed. It appears quite clearly that the parties contemplated, not alone the immediate profits derivable from sales under the contract, but the prestige and renown which would naturally attach to the .plaintiff's exclusive selection as a business agency in the largest department establishment in the world. Upon this head Koewing testified as follows:

"Mr. Siegel pointed out to me that it would be of great importance and value to the Standard Fashion Company to enter into a contract with the Siegel-Cooper Company as an advertisement of the importance of our goods, especially in view of the fact that by so doing they would discontinue the sale of the line of the competitors, and that, owing to this being of considerable outside value to us, we could afford to make extra inducements and terms with them; owing to the value of this advertisement, the Siegel-Cooper Company changing from this company to ours, that we would be justified in mak-

ing such inducements to them. I assented to the proposition, and told Mr. Siegel I should take that into account."

Thus, the plaintiff gave the Siegel-Cooper Company a valuable consideration in these especially advantageous terms, to secure, not merely the running profits which it might make in the execution of the contract, but the value to it in the future of its selection by this great house to the exclusion of all others in the same line of business.

If, therefore, the plaintiff is to have anything approaching to a full measure of relief, it should not only be permitted to recover as damages the immediate profits which it would have realized from the execution of the contract, but should also have an injunction to restrain the defendants from conferring upon a competitor the very prestige and renown for which it contracted, and upon which its future success must largely depend. Even that relief is necessarily but partial and incomplete. It would be a mockery of justice to award it this inadequate relief upon the conditions suggested, and thus, in but a small measure, protect its future at the expense of all its present rights.

The general rule is also invoked that one who has broken his contract may nevertheless be permitted to mitigate the damages for which he thus becomes liable; and it is claimed, as coming within this rule, that the Siegel-Cooper Company should be permitted to avail itself of its contract with the Butterick Company. The Siegel-Cooper Company thus, in effect, asks the court to ameliorate the consequences of its wrongdoing by authorizing its continuance. The suggestion implies a strange lack of consciousness of this company's mercantile delinquency in the premises. It may undoubtedly mitigate the damages, but not surely by adding to them day by day. It may mitigate them by utilizing the space contracted for in all other directions save the sale therein of patterns. But it cannot be permitted to violate its agreement in one direction so as to recoup itself for the loss occasioned by its violation in another direction. Our conclusion is that the decree was more favorable to the defendants, in the particulars discussed, than they were entitled to, and that that part of the judgment is affirmable.

The remaining question is as to the damages. Here we think the learned trial judge erred—First, in holding the Butterick Company liable; and, second, in the manner provided for ascertaining the damages as to the Siegel-Cooper Company. The Butterick Company cannot be held in this action for the damages resulting from the Siegel-Cooper Company's breach of contract. If it is liable to the plaintiff at all, it must be in an action of an entirely different character. The present action is for the specific performance of a contract to which the Butterick Company was not a party. The latter company is made a party defendant only because an injunction is asked to restrain it, as well as the Siegel-Cooper Company, from selling patterns in the space allotted to the plaintiff under its contract. It will be observed that this is not the case of an interlocutory decree for an accounting as to profits derivable by both or either of the defendants, to which, when ascertained upon a

reference, the plaintiff will in the final decree be entitled. It is a case of damages pure and simple, in lieu of a decree for specific performance, and these are necessarily damages for the breach by the Siegel-Cooper Company of its contract. If the plaintiff has any cause of action at law against the Butterick Company,—as to which we express no opinion,—it is not for any breach of contract on the latter's, or the Siegel-Cooper Company's, part, but for what can only be claimed to be an actionable tort in inducing the latter company to break its contract with the plaintiff. Such a claim, even if distinctly and separately made, would not be within the purview of the plaintiff's present complaint. We think, therefore, that the judgment against the Butterick Company should have been limited to the injunction granted, with costs.

As to the Siegel-Cooper Company, the damages should have been ascertained and awarded upon the trial. The court had no power to refer the case upon that head. When it found in favor of the plaintiff upon the general equity of the case, but declined, in the exercise of its discretion, to grant a decree for specific performance, it should have proceeded with the trial of the plaintiff's resulting demand for damages (Sternberger v. McGovern, 56 N. Y. 12; Beck v. Allison, 56 N. Y. 366). The plaintiff had no right to a reference either to try that demand or to inform the court upon the subject. It is true that section 1013 of the Code of Civil Procedure provides that, "in an action triable by the court without a jury, a reference may be made, as prescribed by this section, to decide the whole issue or any of the issues; or to report the referee's finding upon one or more specific questions of fact involved in the issue." All this, however, relates exclusively to equity cases "where the trial will require the examination of a long account." These latter words precede those above quoted in the same section, and it is as to these words that the expression, "as prescribed in this section," relates. This construction was given to section 1013 by the court of appeals in Thayer v. McNaughton, 117 N. Y. 114, 22 N. E. 563, where Judge Andrews said:

"The same rule applies to equitable as to legal actions. In neither case can a compulsory reference be ordered unless the trial will require the examination of a long account. In equity actions the reference may be of the whole issues or any one of them, or to report upon specific questions of fact. But the power of the court to order the reference is limited by the general condition contained in the first clause of section 1013, which is alike applicable to cases triable by the court and cases triable by the jury."

The only other section of the Code at all bearing upon this question of power is section 1015. That section, after authorizing the usual reference to take an account after an interlocutory judgment, adds: "And also to determine and report upon a question of fact, arising in any stage of the action upon a motion or otherwise, except upon the pleadings." This provision was carefully considered in Doyle v. Railway Co., 136 N. Y. 505, 32 N. E. 1008, and it was held that it related only to some question of fact arising collaterally and not upon the pleadings. It was accordingly further held that the damages recoverable in an equity action against an elevated

railroad company to restrain continuous trespasses constitute a direct and vital issue in the case, which in every just sense arises upon the pleadings, and cannot, therefore, be compulsorily referred. This is Judge O'Brien's language upon the point:

"This aspect of the case is not changed by the circumstance that in this form of action the issue of damages is incidental to the general jurisdiction to grant relief by injunction. It is true that equity assumes the jurisdiction necessary to administer complete justice, and incidentally draws into the case all questions that might have been the subject of successive actions at law; still the damages constitute a direct and vital issue in the case, which, in every just sense, arises upon the pleadings."

The learned judge then carefully distinguished the cases of Camp v. Ingersoll, 86 N. Y. 433, and Drexel v. Pease, 129 N. Y. 99, 29 N. E. 241, and showed that there was no conflict between what, upon their special facts, these cases really decided and the rule which he laid down in the case then under consideration. It follows, therefore, that, when the court declined to grant specific performance, the plaintiff's damages became an integral part of the trial, and the learned trial justice should have proceeded to hear and determine the resulting issue upon that head.

The plaintiff may, however, if it so elects, waive this erroneous provision of the decree, and hold all that precedes it. Accordingly, if it shall stipulate within five days that all of the second paragraph of the decree except the award of costs be stricken out, the judgment contained in the first paragraph, together with the award of costs, may be affirmed, without costs here. If, however, the plaintiff does not so stipulate, the judgment appealed from must be reversed, and a new trial ordered, with costs to abide the event. All concur.