VAN BRUNT, P. J., and O'BRIEN, J., concurred; PATTERSON and HATCH, JJ., dissented.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.

---

SAMUEL CUPPLES ENVELOPE COMPANY, Respondent, *v.* JOHN LACKNER, Appellant.

*Contract creating an exclusive agency — when its violation will not be enjoined — a contract annexed to a complaint controls the general allegations of the latter — allegations on information and belief must be accompanied by statements of the sources and grounds thereof — supervision of the performance of a contract distinguished from an injunction against the violation of a negative covenant.*

When a temporary injunction should not be granted in an action brought to enjoin the defendant from violating a contract by which he appointed the plaintiff his exclusive agent for the sale of paper specialties manufactured by the defendant, considered.

Where, in an action based on a written contract, the contract is annexed to the complaint and made a part thereof, the rights of the parties will be determined by the contract itself rather than by the general allegations of the complaint concerning the effect thereof.

FIRST DEPARTMENT, DECEMBER, 1904.                    [Vol. 99.

Allegations based upon information and belief, contained in an affidavit used on a motion for a temporary injunction, constitute no proof of facts so alleged, where neither the sources of the information nor the grounds of the belief are stated.

*Semble*, that while the court will not undertake to supervise the performance of a contract relating to personal property, many of the provisions of which are of such a nature that they cannot be specifically enforced, it will, in a proper case, where irreparable damages are shown, enjoin the violation of a so-called negative covenant contained in the contract.

APPEAL by the defendant, John Lackner, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of September, 1904, enjoining the defendant during the pendency of the action " from selling or delivering goods of his manufacture, or in any way attempting to sell. or deliver such goods to any persons, firms or corporations, other than the plaintiff, or from doing any other acts that may tend to injure the plaintiff."

*Thomas A. Atchison*, for the appellant.

*Malcolm W. Clephane*, for the respondent.

LAUGHLIN, J.:

The action is based upon a contract, and although not directly for specific performance, yet this is sought indirectly by an injunction restraining a breach of the contract by the defendant. The plaintiff is engaged as a sales agent in marketing paper specialties, and it has a branch agency and agents in the city of New York and in various other places throughout the United States. The defendant is engaged in manufacturing paper specialties in the city of New York. On the 15th day of March, 1904, a contract in writing was made between the defendant and F. M. Kimbark in the name of the plaintiff, which purports to contain the following covenants and agreements on the part of the respective parties, to wit : On the part of the defendant that he appointed the plaintiff his exclusive selling agent in the United States for the sale of " paper specialties " then manufactured or thereafter to be manufactured by him or his successors or assigns; that he would furnish " with all reasonable despatch, upon the orders of the said Envelope Co., any goods manufactured by him, his successors or assigns ; " that the prices of the goods so to be furnished by the defendant should be " at all times at

least twenty per cent below the ruling jobbers' purchase prices for like goods as sold to jobbers in any part of the United States, provided always, that such prices are thirty per cent above the cost of manufacture of such goods to said John Lackner;" that if such prices should not provide for thirty per cent profit to the defendant, then the prices should be regulated "by special agreement, by which reasonable figures shall be decided upon;" that should the prices agreed to be paid by the plaintiff to the defendant provide for a profit in excess of thirty per cent above the cost of manufacture, "then the prices of such goods shall immediately be readjusted so as to permit a manufacturer's profit to said John Lackner not to exceed thirty-five per cent, and all profits in excess thereof which shall have been received by said John Lackner from said Envelope Co. shall forthwith be divided equally between the parties hereto;" that he would loan the plaintiff his books for a period of one year from date, and also the books then in his possession and owned by him standing in the name of F. C. Cassell; that he would furnish the plaintiff samples of paper specialties "manufactured or to be manufactured by him, to the value of Five hundred dollars annually, at half the actual cost thereof; said Five hundred dollars representing the cost;" that he would "ship or deliver all goods which may be ordered by said Envelope Co. when and in the manner ordered;" and on the part of the plaintiff, that it would use its best endeavors to sell the entire product of the defendant's factory, and to increase the sales during the second year of the contract period by ten per cent over those of the first year, and those of the third year by ten per cent over those of the second year; that it would purchase from the defendant "exclusively those goods which he manufactures and for which it may have a sale, and any other articles in the line of paper specialties which he originates and it may be able to sell;" that it would pay to the defendant on the first, tenth and twentieth of each month "for all goods which it may have received and accepted from said John Lackner during the preceding interval;" that the plaintiff might label, in a manner satisfactory to it, all goods "sold to it as follows: 'Manufactured by John Lackner. Samuel Cupples Envelope Co., Sole Selling Agent, New York City;'" that it would advertise the goods as manufactured by the defendant; that it would deliver to the defendant's land-

lord the sum of $108.33 on the first day of each month "as rent in advance, until the first day of May, 1906 — the expiration of the lease now held by John Lackner." The contract was to continue during a period of three years, and with the exception of a covenant for renewal by mutual agreement, to be made six months prior to its expiration — which manifestly was not binding — the foregoing are its only material provisions.

The contract is annexed to the complaint and made a part thereof. The rights of the parties, therefore, are to be determined by the contract, rather than by the general allegations of the complaint concerning the effect thereof. The complaint alleges that the plaintiff has fully performed the contract on its part, but that the defendant has "solicited orders from and made sales to persons, firms and corporations other than the plaintiff, of said paper specialties of his manufacture, without the consent of the plaintiff, and is still continuing so to do, thereby depriving the plaintiff of its just profits and injuring the business of the plaintiff, by which the plaintiff alleges that it will suffer damage in the sum of Two thousand dollars ($2,000);" and judgment is demanded perpetually enjoining the defendant during the term of the contract from selling or endeavoring to sell and from delivering "any of the goods of his manufacture to any person, firm or corporation other than the plaintiff, or from otherwise injuring in any way the business of the plaintiff," and for a temporary injunction to like effect and for the damages sustained and costs.

None of the allegations of the complaint is stated to be made on information and belief. The verification is made by said Kimbark. It is made in the usual form, except that he says that he is the manager of the plaintiff and that the reason the verification is not made · by it is that it is a corporation. The motion for the injunction was brought on an order to show cause and was made on the complaint and three affidavits. The defendant opposed the granting of the motion solely on the ground of the insufficiency of the moving papers. The affidavits, in addition to the formal requirements, show a single sale by a former soliciting agent of the plaintiff after his discharge of 3,000 "chop-holders" to the Hotel Navarre in the city of New York for one dollar per thousand; that the bill therefor was rendered by the defendant to the hotel and paid, and

that this sale was not authorized by the plaintiff. There are other allegations in the affidavits based upon information and belief, but neither the sources of the information nor the grounds of the belief are stated. They constitute no proof of the facts. (*Mowry* v. *Sanborn*, 65 N. Y. 581.) I am of opinion that the moving papers were insufficient to warrant the injunction order *pendente lite*. There is no allegation that Kimbark was the general manager of the plaintiff, or that the execution of the contract by him was authorized, or that it has been performed in part; but, doubtless, the defendant would be estopped from questioning the validity of the contract, and the bringing of the action would be a ratification thereof by the plaintiff. The fair construction of the contract limits its binding scope strictly to " paper specialties " manufactured by the defendant. By its express terms it presupposes that the defendant may originate other articles or novelties in the line of paper specialties, and these the plaintiff was to have the privilege of taking provided it should be able to sell them. There is no allegation in the complaint or averment in the affidavits showing that " chop-holders " are paper specialties. It does not appear of what material they are manufactured. The plaintiff, therefore, fails to show that the defendant has made any sale in violation of the contract. Moreover, there is no allegation in the complaint of irreparable damages, and no facts are stated either in the complaint or in the affidavits showing that the plaintiff has not an adequate remedy at law for any damages it has sustained or may sustain by a violation of the contract on the part of the defendant. It does not appear that the plaintiff has given the defendant any order for these goods, as contemplated by the contract, or that the plaintiff would have been able to sell them. It is evident that many of the provisions of the contract are of such a nature that they could not be specifically enforced, and the court will not undertake to supervise the performance of such contracts, but in a proper case where irreparable damages are shown, will enjoin a violation of a so-called negative covenant. (*Standard Fashion Co.* v. *Siegel-Cooper Co.*, 30 App. Div. 564; affd., 157 N. Y. 60; S. C., 44 App. Div. 121.) It does not even appear that the plaintiff, upon the strength of the contract, has made other contracts for the sale of these goods which it will be unable to fulfill

and will thereby become subjected to an action for damages; and if it had, it is doubtful whether the injunction would be authorized at least without showing irreparable damage. (*New Hartford Canning Co.* v. *Bulifant,* 78 App. Div. 6, and cases cited.) Even in the cases of contracts for the performance of "special, unique and extraordinary" personal services, where the court, although unable to compel a specific performance, will enjoin a violation of a negative covenant — the performance of the same or similar services for others or elsewhere — this relief is only granted upon the theory, and where it is shown, that the damages are irreparable. (*Metropolitan Exhibition Co.* v. *Ward,* 24 Abb. N. C. 393; *Pratt* v. *Montegriffo,* 25 id. 334; *Metropolitan Exhibition Co.* v. *Ewing,* 24 id. 419; *Strowbridge Lithographic Co.* v. *Crane,* 20 Civ. Proc. Rep. 24.) The defendant has been enjoined from selling any of the products of his manufacture to any person other than the plaintiff, and neither by the injunction order nor by the contract is the plaintiff obligated absolutely to take and pay for such products.

For the reasons stated, therefore, the order should be reversed, with ten dollars costs and disbursements, and the motion to vacate the injunction granted, with ten dollars costs.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and McLAUGHLIN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion to vacate injunction granted, with ten dollars costs.