the agent had in fact possessed the authority which he assumed. Dung v. Parker, 52 N. Y. 494; Baltzen v. Nicolay, supra. Otherwise, as is pointed out in the latter case, the anomaly would be presented of giving a right of action against an assumed agent for an unauthorized representation of his power to make a contract, when the breach of the contract itself, if he had been authorized to make it, would have furnished no ground of action. In the present case no recovery could have been had against the actual owner of the property, even if her husband had been authorized by her to retain the plaintiffs to find a purchaser, for there is neither allegation nor proof that she or her attorney in fact had ever given to plaintiffs the written authority prescribed by chapter 128, p. 312, Laws 1901. Nor did the plaintiffs show by competent legal evidence that they had ever communicated to the deceased the fact that they had procured a purchaser. Assuming that they had been competently and legally employed, no right to a commission would accrue until they had not only found a purchaser, but had notified the owner or her agent of the fact, because until then there could be no refusal. No claim is made of notice to the owner, and plaintiffs are forced to rely upon a notice to the assumed agent. It is sought to show that such notice was given by telephone. The answer admits that some one notified the deceased by telephone that a purchaser had been found, but the answer does not admit that the person so telephoning was one of the plaintiffs; leaving that fact to be established by proof. It was sought to be established by the evidence of one of the plaintiffs that on the day in question he called up the deceased on the telephone, and "got him." We think that this evidence was improperly received, under the provisions of section 829, Code Civ. Proc. Healey v. Malcolm, 99 App. Div. 370, 91 N. Y. Supp. 207. Rejecting this incompetent evidence, there is nothing in the case to show that plaintiffs ever tendered to the deceased the proposed purchaser, so that, if he had been duly authorized to employ plaintiff, and to accept or reject, in behalf of his wife, the proposed purchaser, there is no legal evidence in the case that the opportunity to do so was ever presented to him.

The judgment must be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

---

(112 App. Div. 703)

RUSSELL HARDWARE & IMPLEMENT MFG. CO. v. UTICA DROP FORGE & TOOL CO.

(Supreme Court, Appellate Division, Fourth Department. May 2, 1906.)

REFERENCE—COMPULSORY REFERENCE—NATURE OF ISSUES.

> Code Civ. Proc. § 827, provides that, whenever the court is obliged to make an examination or inquiry, it may direct a reference, and section 1013 provides that the court may, on its own motion, direct a trial of issues of fact by a referee where the trial will require the examination of a long account, and will not require the decision of difficult questions of law, and that in an action triable by the court a reference may be made to decide the whole issue or any of the issues, or to report the referee's finding upon one or more specific questions of fact involved in the issue; and section 1015 provides that the court may direct a reference

to take an account and report to the court thereon, either with or without the testimony, or where it is necessary to do so for the information of the court, and also to report upon a question of fact arising in an action. Plaintiff sued for an accounting on a contract whereby defendant was to pay plaintiff royalties for manufacturing and selling a certain patented device, and for a permanent injunction restraining the making and sale of the device, and the court by an interlocutory judgment on its own motion ordered a reference to take proof of the amount due plaintiff for royalties and damages, and requiring the referee to report the proof with his opinion, and reserving the question of injunctive relief until the coming in of the referee's report. *Held*, that the interlocutory judgment was erroneous as referring questions not merely incidental to the relief sought, and in that the reference, as concerned incidental questions, was not in the form required by section 1015.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Reference, § 29.]

Appeal from Special Term, Oneida County.

Suit by the Russell Hardware & Implement Manufacturing Company against the Utica Drop Forge & Tool Company. From a judgment in favor of plaintiff, and from an interlocutory judgment, defendant appeals. Reversed, and new trial granted.

The action was brought for an accounting upon a contract made between the parties, whereby the defendant agreed to pay certain royalties for manufacturing and selling a certain staple puller, which theretofore had been manufactured and put upon the market, known as the "Russell Staple Puller," and claimed to be protected by letters patent, and also for a permanent injunction restraining making and selling such a device under another name, or in violation of the contract. An interlocutory judgment was directed, appointing a referee to take proof upon the question of damages, and final judgment directed upon the coming in of the report of the referee. The appeal is taken from both the final and the interlocutory judgment.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Richard S. Martin, for appellant.

Charles H. Searle, for respondent.

KRUSE, J. The plaintiff, a foreign corporation organized under the laws of the state of Missouri, was engaged in the business of manufacturing and selling the Russell staple puller, a device for pulling staples. It was located and commenced manufacturing the device at Kansas City in October, 1898, it having become the owner of letters patent granted to inventor of said device. It continued the business until January 11, 1900. The device was extensively advertised by the plaintiff, all of the profits of the business having been spent for that purpose, and it became widely known, and had a large and extensive sale. This was the condition of the business when the defendant entered into negotiations for the contract, which was finally entered into by the parties on the 11th day of January, 1900. By this contract the plaintiff granted to the defendant the exclusive right to manufacture and sell the device according to the letters patent in the United States and other nations. Each party agreed to endeavor to detect and prevent infringements, and communicate promptly to the other any information relative thereto; the prosecutions for the infringements to be assumed and directed by the plaintiff, or, in the case of failure of plaintiff, then by the defendant, and the expense to be repaid from

the "license fee," so called, provided for in the contract, so that ultimately the expense was to be borne by the plaintiff. The defendant agreed to have its plant in full operation by January 1, 1901, sufficient to supply the trade as demanded, and take the entire charge and control of manufacturing such device; but in the meantime the plaintiff was to continue its factory at Kansas City, and deliver the entire output, as might be required, to defendant, beginning February 1, 1900, upon certain terms and fixed prices, but when defendant was prepared to manufacture, as has been stated, plaintiff should cease manufacturing the tool. The defendant agreed to pay for all goods manufactured by it, upon the sale of such goods, a royalty of 50 cents a dozen flat, to be made at the end of each month from and after February 1, 1900; the said licensee (the defendant) to furnish statement from month to month of all sales made by it during the previous month, and the licensor (the plaintiff) to have the right at all reasonable times to examine the books of said licensee, so as to verify the correctness of the said statement. It was further provided that, on default in the payment of the royalties, or failure to manufacture the article according to the terms of the contract and keep the trade properly canvassed, the privilege of such manufacturing and selling should become null and void after giving the defendant six months' notice. It further provided that on and after February 1, 1900, the defendant should have full charge and control of the sales, fill the orders of customers at certain prices, and all agencies or contracts for the sale of the article made between the plaintiff and its agents and salesmen should be canceled, and no contracts or prices made by plaintiff for future sales, but all contracts and prices to be made by the defendant. It will thus be seen that the contract contemplated the giving up by the plaintiff of its entire business and the good will thereof, closing down its works, and turning it all over to the defendant, and giving it the absolute and sole control thereof, subject only to the terms of the contract. This was done. The plaintiff closed up its works and went out of business as soon as the defendant was ready; the defendant beginning about April 1, 1901, to manufacture the article, and has even since continued to manufacture and sell it.

The Russell patent was issued in 1895, and for the purpose of fortifying that patent the plaintiff acquired another patent on March 12, 1900, for a similar device, known as the "Heard Patent," issued June 14, 1872, which inured to the defendant's benefit, and thereafter the article was stamped with appropriate reference to both patents. The article was changed slightly from time to time to improve it, but in its essential features it has remained unchanged, and the trial judge finds that from the commencement of the manufacturing of the tool by the defendant down to about March 1, 1904, the tool was stamped with the words "Patented Sept. 3, 1895; Patented June 14, 1892," and that the tool was advertised and sold as the Russell staple puller, and further finds that the defendant failed to perform the contract; that defendant made false statements of sales, and failed to account for all the sales made by it, and remitted less than the true amount due; that from about March 1, 1904, the defendant failed to stamp the tool as patented, and changed the name to evade liability for payment of royalties, and drive

the Russell staple out of the market, and substitute therefor the same device under another name, and has sold the device since about March 1, 1904, many thousand of them, under the name of the "Utica Improved Staple Puller," and the Russell staple puller, under its true name, has been withheld from the market.

We think the evidence justified these findings, as well as the decision made by the trial court that the plaintiff was entitled to recover the unpaid royalties and the damages the plaintiff had sustained by these violations of the contract. The trial court did not, however, determine in its decision the amount of the unpaid royalties, nor what amount of damages the plaintiff had sustained from these violations, but directed an interlocutory judgment to be entered, establishing the defendant's liability, and of its own motion ordering a reference "to take proof as to the amount due the plaintiff for royalties, and the amount of damages it has sustained, and report such proof, with his opinion thereon, to the court"; and the question as to whether the plaintiff was entitled to injunctive relief was also reserved by the interlocutory judgment until the coming in of the referee's report. The defendant excepted to this decision, and specifically to the provision ordering a reference.

We think that this practice cannot be sustained, and that it resulted in a mistrial, and that the interlocutory judgment and the final judgment based on the evidence taken before the referee and his findings thereon must be reversed.

Counsel for the respondent relies upon sections 827 and 1015 of the Code of Civil Procedure. We think neither of these sections authorize a compulsory reference, as was done in this case, nor does section 1013 furnish such authority. It must be remembered that this action was brought and relief demanded in the complaint for a money judgment and an injunction restraining certain violations of the contract. The final judgment awarded both, but the interlocutory judgment awarded neither.

The essential questions raised by the pleadings should have been determined upon the evidence given upon the trial, and not left in abeyance, to be tried upon the evidence given before the referee, supplemented by his findings and opinion thereon. Kirkwood v. Smith, 72 App. Div. 429, 75 N. Y. Supp. 1016; Standard Fashion Co. v. Siegel-Cooper Co., 44 App. Div. 121, 60 N. Y. Supp. 739. These two questions were not merely incidental to the primary relief; they were the very questions involved in the issues raised by the pleadings. The reference was not limited to merely taking an account of the sales, but it directed generally that proof be taken of the amount due the plaintiff for royalties, and the amount of damages it had sustained, and mentioned in the fourth conclusion of law, which was "the compensation for the damages it has sustained in consequence of defendant's acts in making, advertising, and selling said tool under a new name, and without being stamped, as covered by plaintiff's patents, and in consequence of the withdrawal of said Russell staple puller from the markets under its true name and properly stamped," and even so far as the reference was merely upon incidental questions, which is permissible under section 1015, it is not in the form required

by that section, for it only authorized the referee to take proof and report the same with his opinion thereon.

The question of the power of the court to order a compulsory reference under these sections and the form of reference has been passed upon by the Court of Appeals in Doyle v. M. E. R. Co., 136 N. Y. 505, 32 N. E. 1008, and again in Standard Fashion Co. v. Siegel-Cooper Co., 44 App. Div. 121, 60 N. Y. Supp. 739, and we regard these cases decisive upon that question and decisive of this case.

The judgment should be reversed, and a new trial granted, with costs to abide the event.   All concur.