CASTLE v. BELL TEL. CO. OF BUFFALO et al.

(Supreme Court, Special Term, Monroe County. December, 1899.)

INJUNCTION—NECESSITY TO SHOW PECUNIARY DAMAGE — UNDERGROUND CONDUITS—TELEPHONE COMPANY—TRESPASS.

Plaintiff, who did not claim to own the fee to the center of the street, alleged in his complaint that the construction in front of his premises of an underground conduit for the placing of defendant's telephone wires therein would prejudice his rights, and be a continuing trespass upon his property, but failed to set up any pecuniary damage to result therefrom. *Held* not a sufficient showing upon which to base an injunction restraining the construction of such conduit.

Motion to dissolve an injunction granted to Wilmot Castle against the Bell Telephone Company of Buffalo and others. Motion granted.

Satterlee, Yeoman & Taylor, for plaintiff.

John A. Barhite and Thomas Raines, for defendants.

DAVY, J. This is a motion to dissolve the temporary injunction granted herein on the 14th day of November, 1899, restraining the defendant the Bell Telephone Company of Buffalo from digging up the earth in front of the plaintiff's premises on Oxford street, and from laying its conduit under the surface of the street. In 1883 the Bell Telephone Company, which had been duly incorporated under the laws of this state, obtained permission from the common council of the city of Rochester to erect poles in many of the principal streets of said city, including Oxford street, and to string its wires thereon, which poles and wires it has continued to use for the purposes for which it was incorporated. In 1888 controversies and litigations arose between the city of Rochester and the Bell Telephone Company, which were finally settled by a contract in writing between the city and the telephone company. This contract granted to said company permission to maintain its poles and wires in, along, and upon the public streets, avenues, and places within said city, and to substitute in place thereof at least one-half mile of underground conduits in each year, and to place its wires therein, under the supervision of the executive board or the common council of said city. It appears that the telephone company has 60 miles of poles strung with wires, and has constructed 27 miles of conduits for the use of itself and the city of Rochester, in pursuance of said contract. There were a number of interesting questions raised and argued upon this motion, which I do not deem it necessary at this time to discuss, for the reason that many of these questions affect the city of Rochester, which is not a party to this action. The prin-

cipal question for consideration upon this motion is whether there has been an interference with the plaintiff's property rights to his actual prejudice and damage. The plaintiff does not claim to own the fee to the center of the street, nor does he claim any actual damage, but he alleges in his complaint that the construction of the conduit in front of his premises will prejudice his rights, and will be a continuing trespass upon his property. It is urged by the learned counsel for the plaintiff that it is not necessary that the complaint upon which the injunction was granted should show any pecuniary damage to his property, and that the court must not dissolve the injunction where the rights of the plaintiff are invaded, even if the damages cannot be measured by a money standard. I am inclined to think that the plaintiff's contention is in conflict with the authorities in this state. However plausible the argument which is advanced, and which rests upon the general notion that the right to the injunction is not to be determined by the extent of the damage, I think that, where the gist of the action is an actual damage to the property, and where actual damages are not alleged in the complaint, the court is at liberty to disregard the mere technical trespass, and refuse the injunction. It has been repeatedly held that the granting or refusing of equitable relief by way of injunction depends to a great extent upon the particular facts in each case, and that a court of equity is not bound to issue an injunction, when it will produce great public or private mischief, merely for the purpose of preventing a technical trespass. McHenry v. Jewett, 90 N. Y. 58; Wormser v. Brown, 149 N. Y. 173, 43 N. E. 524. It was held in McHenry v. Jewett, supra, that a mere allegation in the complaint of serious or irreparable injury apprehended or threatened to one's property, not supported by facts or circumstances tending to justify it, is insufficient to authorize a temporary injunction. It is true that allegations of damages are not necessary in the sense that the amount which the plaintiff should receive enters into the determination of the right to equitable relief, but damages are necessary in order that the court may determine whether they are of such substance as to warrant it in granting an injunction. The rule has often been stated that a court of equity ought not to issue an injunction, where it will produce great public or private mischief, for the purpose of protecting a technical or unsubstantial right.

In Jerome v. Ross, 7 Johns. Ch. 315, Chancellor Kent, in discussing the practice of granting injunctions in trespass, says:

"I do not think it advisable, upon any principle of justice or policy, to introduce the chancery remedy as its substitute, except in strong and aggravated instances of trespass, which go to the destruction of the inheritance, or where the mischief is remediless."

He says:

"I do not know a case in which an injunction has been granted to restrain a trespasser merely because he was a trespasser, without showing that the property itself was of peculiar value, and could not well admit of due recompense, and would be destroyed by repeated acts of trespass."

In speaking of the results of decisions in England and in this state, he says:

"These cases all show that, in respect to acts of trespass committed upon land, even by persons in a public trust, under color of law, the court has not interfered by injunction, unless where the trespass was permanent, as well as grievous, or went to destroy the value of the property to the owner. It is not sufficient that the act be simply, per se, a trespass, but it must be a case of mischief, and of irreparable ruin to the property in the character in which it has been enjoyed."

In O'Reilly v. Railroad Co., 148 N. Y. 353, 42 N. E. 1064, Judge Gray said:

"There are, of course, the facts that the defendants have come into the street, and that they have appropriated certain easements appurtenant to the abutting property, without making compensation therefor, or offering to do so; but the trespass (to use a term now somewhat commonly applied to these invasions of easements) was merely technically such, and caused no actual damage."

At page 355, 148 N. Y., and page 1064, 42 N. E., he said:

"Where damages are nominal, the court should not assume cognizance of the trespass, and lay the interdict of an injunction."

The court held, in substance, that an injunction should not be granted at the suit of an abutting owner on proof of the wrongful appropriation of the easements of light and air and access, where plaintiff failed to show any substantial pecuniary damage to his property, or loss suffered by reason of the defendant's acts. In the case at bar there is no allegation in the complaint that the plaintiff's easements of light, air, or access to his premises are or will be interfered with on account of the acts of the defendant.

In Doyle v. Railway Co., 136 N. Y. 505, 32 N. E. 1008, it was held that, while the action assumes an equitable form, and is sustained upon equitable principles, it is impossible to lose sight of the fact that its main purpose and object is to recover the damages to the plaintiff's property, and the proof of damages was an indispensable element of the plaintiff's case, as it cannot be supposed that a court of equity would entertain jurisdiction to restrain a trespass that was not shown to have produced any damage or loss to plaintiff. Gray v. Railway Co., 128 N. Y. 499, 28 N. E. 498.

I am unable to discover any features in this case which appeal to the conscience of a court of equity. The defendant had permission from the municipal authorities to erect its poles and construct its wires in Oxford street; also to remove the wires, and place them in a conduit under the surface of the street. The laying of this conduit will not interfere with any of the easements in the street which the plaintiff is entitled to enjoy. It will not obstruct the light, or the free circulation of the air, or access to his premises. The plaintiff does not claim that the taking down of the defendant's wires, strung upon poles, and putting them in a conduit under the surface of the street, would depreciate the rental value of his property. It is a well-known fact that unsightly telephone and telegraph poles are erected in our public streets and strung with a network of wires, and whenever the companies, in good faith, endeavor to place their wires in conduits in the ground, and to remove the poles from the streets, they should be permitted to do so under proper municipal regulations. These wires are comparatively harmless under

the surface of the streets, but, if they are permitted to remain on poles, they are liable to break, and, if charged with a current of electricity, they may endanger the lives of those who are compelled to travel in the streets or upon the sidewalks. It seems to me that public and private interests would be greatly promoted by the change.

I am of the opinion that the facts alleged in the complaint were not sufficient to authorize the granting of the injunction. The motion, therefore, to dissolve the injunction, must be granted, but without costs.