In the Matter of the Application of HELENE SMIDT, Appellant, for a Peremptory Order of Mandamus against JOSEPH V. McKEE, as Acting Mayor of the City of New York, and Others, Respondents.

First Department, March 10, 1933.

*E. DeT. Bechtel* of counsel [*Leslie D. Dawson* with him on the brief; *Carter, Ledyard & Milburn*, attorneys], for the appellant.

*Vine H. Smith* of counsel [*J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the respondents.

*Edward M. Bassett* as *amicus curiæ.*

*David H. M. Weynberg* of counsel for Smith, Weynberg & Rich, as *amicus curiæ.*

TOWNLEY, J. The petitioner in this proceeding applied for a mandamus order against the respondents, constituting the board of estimate and apportionment of the city of New York. The relief demanded was that the record of the proceedings had before said board on the 22d day of May, 1931, with reference to the zoning of certain property on Lexington avenue between Forty-first street and Thirty-eighth street in the borough of Manhattan be corrected and a correct abstract of such record be prepared.

The resolution as it appears in the record approves an amendment of the use district map, section 8, so as to bring the property referred to therein within the boundaries of a retail district, the same having previously been zoned for residence. The vote of the board of estimate and apportionment approving the amendment here attacked was fifteen for approval and one against. The exhibits in the case show clearly the precise change made in the district and the record discloses the parties who are objecting.

The objection of the petitioner is that the protest of property owners entitled to object was sufficient to make a unanimous vote indispensable for the approval of the amendment. The validity of the objection depends upon the construction to be given section 242-b of the Greater New York Charter. This section reads, in part, as follows: " The board may from time to time after public notice and hearing amend, supplement or change said regulations or districts but in case a protest against a proposed amendment, supplement or change be presented, duly signed and acknowledged by the owners of twenty per centum or more of the frontage proposed to be altered, or by the owners of twenty per centum of the frontage immediately in the rear thereof, or by the owners of twenty per centum of the frontage directly opposite the frontage proposed to be altered, such amendment shall not be passed except by a unanimous vote of the board."

The petitioner claims that under a proper construction of this section, the protests filed constitute more than " twenty per centum of the frontage immediately in the rear " of the premises to be altered.

There has been considerable uncertainty in the minds of those charged with the enforcement of the Zoning Resolution as to the meaning of the portion of section 242-b of the charter involved in this proceeding. The board of estimate and apportionment for some time has been proceeding upon the theory that " frontage

immediately in the rear " was the boundary or rear line of the area proposed to be altered. The difficulty with this construction is that it entirely ignores the ordinary significance of the word " frontage " which has uniformly been construed to mean frontage on the street. In *People ex rel. Spinelli* v. *Walsh* (229 App. Div. 745; affd., 254 N. Y. 601) the court, considering the meaning of the word " frontage " in section 7 of the Building Zone Resolution, said: " The ' frontage ' provided for by subdivision ' g ' of section 7 of the Building Zone Resolution means frontage on a public street or place. (*Fulton* v. *Krull*, 200 N. Y. 105.) " Under this definition of the word " frontage," it is clear that the practice of the board of estimate and apportionment in this regard has been erroneous.

The frontage on the side street immediately in the rear of the property to be altered is a continuous line extending from the limit of the change to be made to the next avenue. At what point in this line one must stop in considering the protests of owners is not made clear in the statute. There is nothing in the statute which limits or determines the extent of the frontage to be considered other than such as may be found in the words " immediately in the rear." " Immediately " means proximately or directly. The petitioner, however, contends that the statute is satisfied by the protests of twenty per cent of the *abutting* owners of the frontage immediately in the rear. It seems to us that the adoption of such a construction produces such a series of inconsistencies as does violence to the entire spirit of the statute and the purpose sought to be accomplished. In this proceeding, to cite some instances, frontage on side streets in single ownership vary in extent from two feet to one hundred and eighteen feet. For example: On one side of Fortieth street, east of Lexington avenue, the frontage considered is five feet. On the opposite side of the same street the frontage taken by the petitioner was one hundred and eighteen feet. On the same street, west of Lexington avenue, the frontage on one side taken is twenty-five feet and on the opposite side five feet six inches. On East Thirty-ninth street the frontage taken on one side of the street is eighteen feet and on the opposite side of the street fifteen feet.

Manifestly, an interpretation of a statute which produces these results is unreasonable and even frivolous. " It is one of the fundamental rules in the interpretation of statutes that of two constructions which can be given an ambiguous statute, that which will cause objectionable results is to be avoided. The Legislature is presumed to have intended that good will result from its laws, and a bad result suggests a wrong interpretation." (McKinney's Statutes and Statutory Construction, § 77.)

This statute as a whole shows an intention on the part of the Legislature to divide the possible protestors against a change in use into three classes: (1) The owners of twenty per cent or more of the frontage proposed to be altered; (2) the owners of twenty per cent or more of the frontage directly opposite the frontage proposed to be altered if there be such, and (3) the owners of twenty per cent of the frontage immediately in the rear.

In the first and second classes the total frontage to which the percentage applies is in the normal case the same as the frontage of the property involved. In the third class, if we are to apply the theory of the appellant, the frontage involved might be anything from a few feet to several hundred feet depending on ownership. But the extent of abutting ownership has never been considered a proper basis for adjusting rights in connection with zoning restrictions. In our opinion, the percentages given in the statute referring to frontages are plainly intended to apply to frontages in their relation to the frontage of the property sought to be changed. On petitioner's assumption, twenty per cent of a few adjacent feet might control the granting of a change in the frontage of the properties involving thousands of feet. Such could not have been the intention of the Legislature. In the absence of any clear definition of the extent of the frontage immediately in the rear to which the twenty per cent is to be applied, it must be deemed that such frontage was intended to be co-extensive with the frontage proposed to be altered. This construction produces a volume of possible objections by the owners in the rear equal, but not superior or inferior, to the possible objections coming from the frontage itself or from the frontage directly opposite. The inconsistences involved in the construction contended for by the appellant are thus eliminated.

We are confirmed in this interpretation of the legislative intent by later similar statutes passed by the Legislature as found in the Village Law, section 179, and the Town Law, section 141-c, subdivision 18-d.

It never was intended that the accidents of title should control the propriety of municipal development. On the construction of the statute here adopted the objections filed are considerably less than twenty per cent of the frontage immediately in the rear equal in amount to the frontage involved in the area to be altered. It was, therefore, proper to deny the motion on the merits.

There is, however, a further serious defect in this proceeding. No notice of the application for this order was given to the owners of the property within the area affected by the resolution. No stay of the resolution was applied for. The owners of the property

in the district affected were entitled to make and probably have made substantial changes in the buildings upon their property and in their use in reliance on this resolution. If the relief demanded in this proceeding were to be granted, what is now a legal use of the property in the district affected would become illegal and what was a suitable improvement would be rendered unsuitable and possibly useless. That this should not be done without granting such owners an opportunity to be heard is obvious. A somewhat similar question was passed on by the Court of Appeals in connection with an application for a mandamus order directed to the borough president to compel him to remove the stoop of a building adjoining that of the petitioner as an encroachment upon the highway and a nuisance. The Court of Appeals held that such an application could not be granted without notice to the owner of the property affected (*Matter of Green* v. *Miller*, 249 N. Y. 88). The owners in the area affected, not having had an opportunity to be heard, or to set up any defense that might exist against the petitioner, would not be bound by the decision in this proceeding. The proceeding might well have been dismissed for lack of necessary parties.

The order appealed from should be affirmed, with twenty dollars costs and disbursements.

FINCH, P. J., MERRELL, MARTIN and SHERMAN, JJ., concur.

Order affirmed, with twenty dollars costs and disbursements.